## BRADBURN v. WABASH RAILROAD CO.

1. MASTER AND SERVANT—PERSONAL INJURIES—ASSUMPTION OF RISK—NEGLIGENCE.

   An implied contract exists between an employer and his employé that the latter shall assume the risk of all dangers obviously incident to the employment; and the assumption of such risks is entirely independent of the questions of negligence and contributory negligence.

2. SAME—RAILROADS—SWITCHMEN—KNOWLEDGE OF DANGER.

   A switchman, whose foot was crushed between a car and a pile of lumber placed near the track in a lumber yard contrary to custom, did not assume the risk, where he did not know, and there was no evidence to show that he should have known, of the proximity of the lumber to the track.

3. EVIDENCE—CUSTOM.

   The testimony of witnesses whose business as switchmen had taken them into lumber yards of various cities, that it was customary to pile lumber four or five feet from the tracks, was sufficient evidence of the custom for its submission to the jury.

4. RAILROADS—NEGLIGENCE—DANGEROUS PLACES—WARNINGS.

   A railroad company, having knowledge of the existence of a pile of lumber placed, contrary to custom, so near to a side track as to be dangerous, is guilty of negligence in sending a switching crew over the track with a train without warning them of the danger.

5. SAME—CONTRIBUTORY NEGLIGENCE.

   A switchman, under the necessity of boarding a car in motion, was not guilty of contributory negligence in jumping upon the side of the car as it passed, and standing in the stirrup until he could swing around the corner to the brake-beam in the rear, instead of stepping upon the brake-beam in the first instance, where, by attempting to do so, he would have fallen over broken boards in the middle of the track.

6. SAME—DANGEROUS PLACES—WARNINGS.

   A notice by a railroad company to its employés, purporting to give non-clearing points, described 17 points, opposite which were the words, "Will not clear a man hanging on side of a car." Below the eighth point were printed in the same type

134 575|
e136 ¹114|

134 575|
137 ¹ 85|

134 575|
140 ²324|
140 ¹407|

134 575
f152 149
153 ¹ 35

134 575|
158 ¹316|

the words, "Material piled alongside of tracks." *Held*, that this described the character of the danger at the eighth point, and was not notice that material might be found piled alongside any of the tracks.

Error to Wayne; Hosmer, J.   Submitted June 5, 1903. (Docket No. 34.)   Decided October 27, 1903.

Case by William G. Bradburn against the Wabash Railroad Company and the Pere Marquette Railroad Company for personal injuries.  From a judgment for plaintiff, defendants bring error.  Affirmed.

*Alfred Russell*, for appellant Wabash Railroad Co.

*Frederick W. Stevens*, for appellant Pere Marquette Railroad Co.

*Raymond E. Van Syckle*, for appellee.

Carpenter, J.   Plaintiff sustained personal injuries while in the employ of the Union Terminal Association, a co-partnership composed of the two defendants.  He brought this suit for compensation, and recovered a verdict and judgment in the court below.

Plaintiff received his injuries early in the morning of August 26, 1901, on a track known as the "Parker Siding," in the city of Detroit.  He was then, and had been for about two years, employed in defendants' yard at Detroit, in charge of a switching train.  This Parker siding was situated on the ground of private individuals, adjoining defendants' tracks on the north.  It formed a junction with defendants' tracks at the property of the Detroit Gas Company.  It ran in a westerly direction through the property of said company, and through some adjacent lumber yards, a distance of 377 feet, nearly parallel with defendants' tracks.  On the morning in question, plaintiff had occasion to take out of said siding four empty cars, which were located near the western end of the siding. After attaching these cars to the engine, plaintiff ordered

the engineer to move said train to defendants' main track.
When he gave this order, plaintiff stood on the north side of
the siding, about 15 feet from the rear end of the rear car.
(This rear car was a Hocking Valley gondola car — so
described — of extra width.) He jumped on the moving
car as it passed him, and stood in the stirrup that hung
underneath its side, near its rear end. He then under-
took to swing himself around the corner of the car to the
brake-beam which hung underneath its rear end, in order
that he might not, as we infer, be injured by collision with a
coal chute standing on the gas-works property, which
came within six or eight inches of the track. Before he
had completed this change in his position, his left foot,
which he had not yet removed from the stirrup on the
side, was caught and crushed between said car and a pile
of lumber situated about 25 feet beyond the property of
the gas company.

This pile of lumber was in the lumber yard, and situ-
ated very close to the track. It was about three feet in
height. It had been there from 60 to 90 days. Before
plaintiff's injury, defendants had notified the proprietor
of the lumber yard. "to move the piles of lumber along
said track." We think this testimony warrants the infer-
ence that the existence and situation of the particular pile
of lumber under consideration was known to defendants,
for it certainly interfered with their business as much or
more than any other pile of lumber in said yard. Plain-
tiff testifies that it was so dark at the time of his injury
that he could not see the pile (though he made a vigilant
use of his eyes), and that he had no prior knowledge of
its existence. He explains this ignorance by testifying
that he had never been on the siding before, that the lum-
ber pile could not be seen from the main track because the
view of it was hidden by other piles, and that he made his
entrance into the siding on the occasion of his injury, not
by passing up the siding, but by walking through the
lumber yard from a point on the main track to a point
near the end of the siding. He also testifies that, when

he reached the siding, he noticed that lumber was piled all along the south side (except at intervals left for passageways) close to the track, while, so far as he could see, the north side was clear. Plaintiff also testifies that it is customary in lumber yards to pile lumber four or five feet from the track, so as to leave "room enough for a man to walk alongside and do his work." He also testifies that, where platforms are found on one side of the track, "the other side is always clear." Other witnesses testified that there was a custom in lumber yards to pile lumber close to the track only on one side, so as " to leave one side open for the shoving in and out of lumber out of a car door." There was evidence that plaintiff was notified in writing of certain points of danger in defendants' yard. This notice, as we shall point out later in this opinion, in our judgment had no material bearing on the case.

It is contended by defendants that a verdict should have been directed in their favor, because: *First*, plaintiff's injury resulted from an assumed risk; *second*, there was no evidence of defendants' negligence; *third*, plaintiff was, as a matter of law, guilty of contributory negligence. It is also contended that the court erred in his charge to the jury respecting the construction of the notice served upon plaintiff.

1. Did plaintiff's injury result from an assumed risk? The principle which prevents recovery when an employé has assumed the risk should not be confounded—though it sometimes is—with the principle which prevents recovery when he himself is negligent, or when his employer is free from negligence. If the principle of assumed risk—as many seem to suppose—has application only to cases in which the employer would be held free from liability either on the ground that he has not been negligent or on the ground that the employé has been guilty of contributory negligence, it must be confessed that it is a principle of no great importance. While it must be conceded that the principle of assumed risk does sometimes furnish an additional ground for declaring the

employer free from liability in cases where he is free from negligence and in cases where the employé is guilty of contributory negligence, that principle is nevertheless a distinct principle, and may be applied in cases in which the employer is negligent and the employé free from contributory negligence. The fact that the principle of assumed risk is sometimes applicable in cases where the employer is free from negligence and sometimes where the employé is guilty of contributory negligence only proves that the three principles — negligence, contributory negligence, and assumed risk — are consistent. It by no means proves their identity.

The principle of assumed risk rests upon the ground that it is an implied contract between the employer and the employé that the employé shall assume the risk of all dangers obviously incident to his employment. See *Bauer v. American Car & Foundry Co.*, 132 Mich. 537 (94 N. W. 9). The employé assumes the risk of all dangers obviously incident to his employment, whether the employer is negligent or free from negligence in exposing him to those dangers. If the employer is not negligent in exposing the employé to those dangers, he is not liable for any injury resulting, for two reasons: (*a*) He himself is free from negligence; and (*b*) the employé has assumed the risk. When, however, the injury to the employé results from an assumed risk to which an ordinarily prudent employer would not have exposed him, there can be no recovery; not because the employer was not negligent, for he *was* negligent, but because the employé assumed the risk. It is equally clear that the principle of assumed risk is not confined in its application to cases in which the employé is guilty of contributory negligence. Cases, of course, often arise in which the employé has assumed a risk which an ordinarily prudent person would not assume; and these, of course, may be disposed of on the double ground of assumed risk and contributory negligence. Cases also arise where the employé has assumed a risk which it was not negligent to assume,

and these must be disposed of, not on the ground of contributory negligence, but on the ground of assumed risk.

Can we say in the case at bar, under the showing made by plaintiff, that he assumed the risk which caused his injury? The doctrine of assumed risk applies, and is limited in its application, to dangers which the employé either actually knows or should know. *Balhoff* v. *Railroad Co.*, 106 Mich. 606 (65 N. W. 592). Clearly, we cannot, without discrediting plaintiff's testimony, say that he actually knew the danger in question. Can we say that he should have known it? We cannot say that he should have known it, unless he should have inferred it from some fact or circumstance known to him, or open to his observation. If we credit his testimony, there was no fact known to him from which he could have inferred this danger. Was any fact open to his observation from which he should have inferred it? If he had repeatedly passed in sight of this pile of lumber (see *Ragon* v. *Railway Co.*, 97 Mich. 265 [56 N. W. 612, 37 Am. St. Rep. 336]; *Miller* v. *Railway Co.*, 133 Mich. 564 [95 N. W. 718]), or if there was a custom which should have led him to antici- pate that it might be piled in close proximity to the track (see *Pahlan* v. *Railway Co.*, 122 Mich. 232 [81 N. W. 103]), it would be our duty to say that there was open to his observation some fact from which he should have in- ferred the existence of this danger. If his testimony is believed,—and this was a question peculiarly for the jury, —plaintiff had not, before this occasion, been in sight of this pile of lumber. Can we say that he should have anticipated the existence of this danger from the existence of a custom to pile lumber close to the track, open to his observation? If there was in fact such a custom, the case of *Pahlan* v. *Railway Co.*, *supra*, is an authority for the proposition that plaintiff was bound to notice it, and from it infer the existence of the danger to which he was ex- posed. There is, however, in this case, no evidence of such a custom, but, on the other hand, there is evidence that it was not customary to place these piles of lumber so close to the track.

It is earnestly argued by the defendants that the testimony of the plaintiff respecting this alleged custom was inadmissible and insufficient, on the ground that, "before a custom can be permitted to govern and modify the law in relation to the dealings of parties in any case, it must be uniform, certain, and sufficiently notorious to warrant the legal presumption that the parties contracted with reference to it." We do not think the testimony of plaintiff is open to criticism under this rule. He himself testified that his business had taken him into the lumber yards of Bay City, West Bay City, and Detroit; that there was a custom, as before stated, to pile lumber four or five feet away from the track. This testimony is corroborated by other witnesses. One of plaintiff's witnesses testified, as heretofore stated, that there was a custom in lumber yards to pile lumber close to the track only on one side, so as to "leave one side open for shoving in and out of lumber out of a car door." If this testimony is true, the inference might properly be drawn that defendants knew of said custom,—an inference which is supported by the circumstance that, as heretofore stated, they notified the proprietor of the lumber yard "to move the piles of lumber along said track."

Is there force in the possible suggestion that, because plaintiff assumed the risk of injury from collision with permanent structures adjacent to the siding, he assumed the risk under consideration? If plaintiff's foot had been crushed by collision with the coal chute, located only a few feet distant, then clearly, under the authority of *Pahlan* v. *Railway Co.*, *supra*, we would be bound to say that he assumed the risk, and could not recover. That holding proceeds upon the theory:

"If he is not acquainted with the particular dangers of the line upon which he is to work, it is his duty to give attention to them. He must be on the lookout for buildings near the tracks, and know what persons usually know of the uses of side tracks and such dangers as naturally follow."

It was not intended by this decision to hold that an employé assumes the risk of dangers which he neither knows nor should know. The decision proceeds on the theory that the employé should know what is usually known, and that "it is usual for sidings to be so constructed as to permit cars to stand close to buildings." Clearly, this decision is no authority for the proposition that an employé assumes risks which are unusual, and which are not in fact known to him. It can scarcely be contended that the decision is an authority for the proposition that the employé assumes the risk of dangers of every description which he may encounter while riding on the side of a car on a side track. It is not to be inferred from that decision that an employé must or must not ride on the side, on the rear, or on top of a car on a siding. That decision only illustrates the principle, often before declared (see *Michigan Cent. R. Co.* v. *Austin*, 40 Mich. 247; *Batterson* v. *Railway Co.*, 53 Mich. 125 [18 N. W. 584]; *Pennington* v. *Railway Co.*, 90 Mich. 505 [51 N. W. 634]), that the employé assumes the risk of all dangers usually incident to his work on the siding. He assumes such dangers whether he encounters them when riding on the side of the car, on top of the car, or on its rear. It was not intended by this decision to overrule *Balhoff* v. *Railroad Co.*, 106 Mich., at page 611 (65 N. W. 592), where we distinctly held that, if the employé neither "knew" nor "ought to have known" of the danger, he did not assume the risk. Nor can it be contended that plaintiff's injury was due to his failure to save himself from the consequences of a collision with the coal chute. It may be fairly inferred from his testimony that he was taking the step necessary to prevent such collision. We cannot, therefore, hold that plaintiff's injury resulted from an assumed risk.

2. Were the defendants free from negligence? The testimony of plaintiff tends to prove that the defendants knew of the existence of this pile of lumber, and exposed plaintiff to the danger which occasioned his injury. We

think it clear that the jury could have inferred that an ordinarily prudent employer would have taken a different course.    It is urged that the defendants are not liable, because they had no control of the lumber or of the ground upon which it was piled.    It is sufficient to say of this contention that, though the defendants were not liable on the ground that the lumber was not properly piled, or removed, they were not justified in exposing plaintiff to this danger, known to them and unknown to him.    See *Baxter* v. *Roberts*, 44 Cal. 187 (13 Am. Rep. 160). Though defendants could not have removed the lumber, they could have refused to use the siding in its defective condition, or they could have apprised their employés of the danger to which its use exposed them.

3. Was plaintiff guilty of contributory negligence? It is urged that the plaintiff was guilty of contributory negligence because he did not at once get on the break-beam at the rear of the car, and also because due diligence on his part would have apprised him of the situation of the pile of lumber.    It is sufficient to say, in answer to this claim, that plaintiff testifies that he could not get on the brake-beam before the train started, "on account of broken boards lying in the middle of the track; if I did, I would be liable to stub my toes, or scrape my shins, or fall;" and that it was so dark that, though he looked, he could not see the pile of lumber in question.

4. Error in the charge of the court.    Defendants introduced in evidence a printed notice signed by their superintendent.    Its opening sentence was, "Below I give you nonclearing points on Union Station & Terminal Association's tracks."    Then followed a description of 11 distinct points, opposite which were these words:    "Will not clear a man on top or side of a car."    Below was a description of 17 distinct points, opposite which was stated:    "Will not clear a man hanging on side of a car."    The eighth of these points was:    "American Car & Foundry Company, Forge Department."    Underneath this was printed, in the same type as used generally in the notice:    "Material

piled alongside of tracks." Below that was this: " Salt Sheds, 12th Street Yard." At the bottom of the notice was the following: " I have carefully read the foregoing, and hereby agree to thoroughly familiarize myself with the nonclearing points mentioned. [Signed] WM. BRAD-BURN" (plaintiff). At the same time plaintiff filled in in his own handwriting an application for employment containing this:

"I have also received a list of the danger points, or places where special care is required of trainmen to prevent collisions with bridges above or obstacles at the side of the tracks, on the line of tracks of said association, and I agree to take notice of all such bridges and obstacles, and so perform my duties as not to be injured by them."

It is the contention of defendants that this was a notice to plaintiff that material might be piled alongside of any of the tracks. The trial court, however, in speaking of this contention, said:

"It does not seem to me that the notice in question, or the contract of employment, or the application for employment, whatever it may be, cuts as much of a figure in the case at bar as perhaps either of the counsel may think."

Were the defendants prejudiced by this statement? If they are right in their claim that this was a notice apprising the plaintiff that he might find material piled alongside of any of their tracks, they were prejudiced. If, however, he was simply notified that material might be found piled alongside the tracks of the American Car & Foundry Company, they were not prejudiced. We think the words, " Material piled alongside of tracks," related solely to the tracks of the American Car & Foundry Company. Our reasons are these: The notice purports to be an enumeration of " nonclearing points." Seventeen such points are clearly specified. Between the eighth and ninth of said points, and immediately below " American Car & Foundry Company, Forge Department," we find these words: " Material piled alongside of tracks." These words have no relation to the expressed object of the

notice, except upon the theory that they describe the character of the danger at the point specified immediately above them.   As a matter of fact, the testimony shows that at that point that particular danger existed.   One receiving this notice would have a right, in our judgment, to place that construction upon it.   If defendants intended to notify their employés that material might be found piled alongside of any of their tracks, there is no injustice in requiring them to make that intention manifest. ` In our judgment, therefore, the court did not err to defendants' prejudice by the use of the language complained of.

It results from these views that the judgment of the court below should be affirmed.

The other Justices concurred.