HEWITT *v.* EAST JORDAN LUMBER CO.[1]

1. APPEAL—ACTIONS—"DEATH" AND "SURVIVAL" ACTS.

An objection that plaintiff's action should have been brought under the "Survival Act," instead of the "Death Act," cannot be raised for the first time on appeal.

2. DEATH BY WRONGFUL ACT — DAMAGES — INSTRUCTIONS — FAILURE TO REQUEST.

In an action for wrongful death, the omission of the court, in instructing the jury as to the measure of damages, to refer to the possibility of the remarriage of decedent's widow, is not ground for reversal, in the absence of a request for an instruction in that respect.

3. MASTER AND SERVANT—INJURY TO RAILROAD BRAKEMAN—ASSUMPTION OF RISK.

Where a competent railroad brakeman, who had been in defendant's employ for more than a year, was killed, while coupling cars, by reason of the slipping of a movable platform of a car, due to the presence of an inclined brace between the bolster over the trucks and a cleat on the under side of the platform, *held*, that it could not be said, as a matter of law, that he had assumed the risk.

4. SAME—CONTRIBUTORY NEGLIGENCE.

Where it would have been safe for a railroad brakeman to couple cars from the inside of a curve had it not been for the negligent construction of a car permitting a movable platform thereon to slide forward, in consequence of which he was killed, his attempt so to make the coupling was not contributory negligence.

Error to Charlevoix; Mayne, J.   Submitted November 17, 1903.   (Docket No. 31.)   Decided March 23, 1904.

Case by Margaret Hewitt, administratrix of the estate of David C. Hewitt, deceased, against the East Jordan Lumber Company, for the alleged negligent killing of plaintiff's intestate.   From a judgment for plaintiff, defendant brings error.   Affirmed.

---

[1] Rehearing denied April 26, 1904.

*Brennan, Donnelly & Van De Mark,* for appellant.

*E. N. Clink* (*Halstead & Halstead* and *Converse & Perkins,* of counsel), for appellee.

MOORE, C. J.   This suit was brought to recover damages because of injuries received by David C. Hewitt while coupling cars belonging to the defendant company, which resulted in his death.   From a judgment in favor of the plaintiff, the case is brought here by writ of error.

It is said by defendant that this action was brought under the "Death Act," when it should have been brought under the "Survival Act."   The circuit judge states in the bill of exceptions that no mention was made during the trial of the cause that recovery was erroneously sought under the "Death Act," instead of the "Survival Act." Under these circumstances this court will not consider the question.   *Mower* v. *Verplanke,* 105 Mich. 398 (63 N. W. 302); *Wierengo* v. *Insurance Co.,* 98 Mich. 621 (57 N. W. 833); *John Hutchison Manfg. Co.* v. *Pinch,* 107 Mich. 12, 15 (64 N. W. 729, 66 N. W. 340); *Rogers* v. *Ferris,* 107 Mich. 126, 129 (64 N. W. 1048); *Broughton* v. *Jones,* 120 Mich. 462, 465 (79 N. W. 691); *Storrie* v. *Elevator Co.,* 134 Mich. 297 (96 N. W. 569).

It is claimed the court erred (we quote from brief of counsel) in charging the jury as follows:

"'Evidence has been introduced intending to enable you to determine the loss which she has sustained.   I have forgotten, but you will remember, the amount which she testified she received per year from Mr. Hewitt.   Under the law, her expectancy is 26 years; that is, a healthy person at her age, as they average, will live 26 years.   This does not mean that she will necessarily live that many years, of course.'

"The court should have also explained that the jury were to take into consideration the possibility of Mrs. Hewitt's remarriage.   *Jones* v. *McMillan,* 129 Mich. 86 (88 N. W. 206)."

Counsel for defendant preferred several requests to charge, but none as to the use which the jury might make

of the mortality tables, and did not suggest to the judge that he ought to charge further upon that subject. In view of this situation, we think the following language, used by the court in *Kinney* v. *Folkerts*, 84 Mich. 616 (48 N. W. 283), is in point:

"If the defendants desired fuller instructions, it was their duty to have asked them. Parties cannot remain silent, and thereby lie in wait to ground error, after the trial is over, upon a neglect of the court to instruct the jury as to something which was not called to its attention on the trial, especially in civil cases."

See, also, *Mahiat* v. *Codde*, 106 Mich. 387 (64 N. W. 194); *Record Publishing Co.* v. *Merwin*, 115 Mich. 10 (72 N. W. 998); *McGee* v. *Baumgartner*, 121 Mich. 287 (80 N. W. 21); *Field* v. *Magee*, 122 Mich. 556 (81 N. W. 354).

It is claimed the deceased assumed the risk, and the court should have given the following request:

"The testimony shows conclusively that whatever dangers were encountered by plaintiff's decedent in the operation of coupling and operating defendant's train were well known to him, and were risks assumed by him, and therefore the verdict of the jury must be for the defendant."

This contention is based upon the claim that deceased was a competent brakeman in the employ of defendant for upwards of a year; that he saw the cars which caused the mischief, and knew, or should have known, as much about the use of them as any one. The following description of the construction of the cars and of the claim of the plaintiff in that regard is from the opinion of the court:

"They consisted of the trucks,—four wheels to each truck, two pairs of trucks to each car; these trucks connected by two heavy timbers, called 'leaders,' which were near the center of the bunks or bolsters. When logs were loaded on these cars, they were loaded right onto these bolsters; but when they desired to carry gravel, sand, bark, or wood, it was necessary to have a platform. They therefore had constructed platforms, which they placed upon

the cars when they wanted to use them for this purpose. These were made by heavy planks placed side by side of about the length of the cars, and held together by a two or three inch plank beneath, placed across said planks. The plaintiff claims that this plank was placed there for the purpose of keeping the platform from slipping backwards or forwards while the cars were being shunted.

"Plaintiff also claims that there were extending from the leaders to the top of the bunks, at an angle, heavy iron straps for the purpose of bracing and rendering the framework of the cars more stiff; that these straps or braces extended from the leaders both forward and back of the bolsters; that, when the platform was placed upon them, the cross-plank did not go up tight to the bunk or bolster, but that, at about two or three inches back of the bolster, this cross-piece struck the strap, which, of course, extended at an angle from the top of the bolster down to the leader, and that, by reason of the force of the impact when they came together, the platform would slide forwards or backwards, rising up on the strap or brace which was placed at an angle, and that it would not have done so had the cross-piece been placed directly next to the bolster and this strap had not come between them at this angle. It is this method of constructing the platforms and placing them upon the cars and keeping them there in which, it is claimed, the negligence of the defendant consisted; the plaintiff claiming that some other appliance should have been used to keep the platform from slipping backwards and forwards when the car was being shunted.

"The defendant claims that this cross-piece was not placed there for the purpose of preventing the platform from slipping, but that its sole purpose was to form the platform itself, and to keep the planks stationary, and that it was not placed there for the purpose of keeping them from moving backwards or forwards."

It is the claim of plaintiff that the situation of these straps of iron and of the cross-pieces or cleats nailed under the planks, and their relation to each other, was not obvious to the deceased in the discharge of his duties. It is evident the mechanic who constructed the cars and the movable platforms knew the method of construction, and, if he had stopped to think, would have known that the

136 MICH.—8.

angle at which the iron braces were put would make an inclined plane, up which the cleat on the under side of the platform would travel, lifting and shifting the platform if the collision between the cars at the time they were coupled was sufficient.

Justice McGRATH, in speaking for the court in *Piette* v. *Brewing Co.*, 91 Mich. 605 (52 N. W. 152), said:

· "The risks incident to an employment, and which an employé assumes, are those which are inseparable from the employment, and which the exercise of ordinary care on the part of the employer in the selection, use, and operation of appliances cannot avoid. A danger which exists only because of defective appliances, of which an employé has no notice, cannot be said to be one of the risks which the employé assumes."

In *Bradburn* v. *Railroad Co.*, 134 Mich. 575 (96 N. W. 929), there is a full discussion of the doctrine of assumed risk, in which Justice CARPENTER said, among other statements:

"The principle of assumed risk rests upon the ground that it is an implied contract between the employer and the employé that the employé shall assumo the risk of all dangers obviously incident to his employment. See *Bauer* v. *American Car & Foundry Co.*, 132 Mich. 537 (94 N. W. 9). * * * The doctrine of assumed risk applies, and is limited in its application, to dangers which the employé either actually knows or should know. *Balhoff* v. *Railroad Co.*, 106 Mich. 606 (65 N. W. 592)."

See, also, *Swoboda* v. *Ward*, 40 Mich. 420; *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111); *Smizel* v. *Iron Co.*, 116 Mich. 149 (74 N. W. 488); *McDonald* v. *Railroad Co.*, 132 Mich. 372 (93 N. W. 1041).

The court charged the jury upon this subject, among other things, as follows:

"An employé entering upon his employment under this implied contract that the machinery or appliances are safe must thereafter use reasonable care and diligence in the conduct of the business, and, if defects which are unknown to the employer should arise which the employé might

have discovered by the exercise of due and reasonable care and caution in the business for which he is employed, then the employé assumes the responsibility, and not the employer, and he cannot recover from the employer by reason of any defects which might have been discovered by the exercise of due and reasonable care and caution and the use of his faculties, and his employer would not be liable where these defects were unknown to him.   * * * So that in charging you that if you find that the deceased had actual knowledge of the faulty construction, if you find there was a faulty construction, and use of those cars and defects and wrongs alleged in the declaration, the plaintiff cannot recover.   Or if you should find that by the exercise of due care—due ordinary and reasonable care—and caution in his employment he would have discovered them, then the law implies a notice which is equivalent to actual knowledge, and he cannot recover.   You will observe, therefore, the importance that attaches to the fact as to whether there was knowledge of these defects on the part of the deceased.''

We do not think it can be said as a matter of law that deceased assumed the risk growing out of the construction of the car and platform.

It is said deceased was guilty of contributory negligence in attempting to couple the cars while on the inside of the curve, and for that reason a verdict should have been directed in favor of defendant.   On the part of the plaintiff it is claimed that it was a comparatively straight track where the stationary car was standing when the coupling was made, and that no harm would have come to deceased if the platforms had not shifted.   The court instructed the jury upon that feature of the case as follows:

'' Before the plaintiff can recover, you must find negligence on the part of the defendant, and the negligence must be that negligence described in the declaration; that is, the faulty construction of the cars, and the defects alleged therein, and the use of the same as I have explained it to you, and that it occurred by reason of the platforms slipping as described in the declaration.   You must also find that there was no contributory negligence on the part of the deceased, and, unless you so find from the evidence, you must return a verdict of no cause of action.

"Now, in relation to this curve on the switch. If you find that the deceased stepped between the cars for the purpose of coupling the same, and that he received the injury in the manner described in the declaration, but that, if he had gone to the other side of the switch,—that is, to the outer side of the curve,—he could have made the coupling and not have received the injury, then your verdict will be 'No cause of action,' because it would be contributory negligence for the deceased to step in to make the coupling between the cars on the inside of the curve, where the danger was apparent, if he could make the coupling all right, and without danger to himself, by standing on the outside of the curve and stepping between the cars on that side. If he voluntarily used the inside instead of the outside, when he might have used either, and the inside was dangerous and the outside was not, then he assumed the responsibility of taking the dangerous side instead of the safe side, and the injury would be the result of his own negligence.

"It will be necessary, therefore, for you to consider whether the deceased was sick upon that day or not, as testified to by some of the witnesses. If you should find that he was taken ill, and that while ill he continued in his employment, and by reason of his sickness he did not see the car approaching, and was, by reason of his distress or illness, injured, when he would not have been had he been well and attending to his business, your verdict must be 'No cause of action.' The defendant in this case knew nothing of his illness,— if you find he was ill,— consequently they could not be held liable or responsible for any injury which resulted to him by reason of his sickness. So that, if this sickness of deceased — if you find he was sick—contributed towards the injury, then he was the one who was in fault in continuing at work when he was ill, and not the defendant, and the plaintiff cannot recover. If, however, you should find that he was ill, but that the illness in no way contributed towards the injury, then you will not consider it in your verdict at all.    *    *    *

"If he could have entered there in safety to himself had it not been for the slipping of the platforms, then the fact that he entered from the inner side would be immaterial, and would not affect the plaintiff's right to recover, because then the accident would be the direct result of the slipping of the platforms, and not of his entering from the inner side of the curve. If it had been safe for him to

have gone in there, and he would not have been injured, except for the slipping of the platform, then he may recover."

There was testimony tending to support the several claims of the plaintiff and defendant. This made it a question of fact. The judge submitted the question of fact in a very carefully considered charge, which properly stated the law.

Judgment is affirmed.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred. GRANT, J., took no part in the decision.