VAN LEUVAN v. ANN ARBOR RAILROAD CO.

1. MASTER AND SERVANT — DECLARATION — RAILROADS — DEFECTIVE APPARATUS—VARIANCE.

    It was not error to refuse to direct a verdict for defendant railroad, in a personal injury case brought by one of its freight conductors who was hurt while coupling a car that he claimed was equipped with a broken and insufficient drawhead, where the declaration alleged that it was defendant's duty, under 2 Comp. Laws, § 5511, to furnish safety coupling devices and to keep them in reasonable repair, that the coup-

ling in question was defective and could only be operated by plaintiff's putting his hand between the cars, that the drawhead of one of the cars had fallen down because of the broken and defective condition of the bolts thereof, that the bolts had been cracked and broken for a period of about three months, and where evidence showed that the bolts which held the drawhead were no part thereof and their defective condition was the proximate cause of the injury: since the defendant was not surprised by the alleged variance and was fairly notified that plaintiff claimed the bolts were defective.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Nor was plaintiff *per se* guilty of contributory negligence because he put his arm between the cars to uncouple them; for he had a right to rely on defendant's performance of its duty, and if it had performed the same his position would have been a safe one.

3. APPEAL AND ERROR — ASSIGNMENTS — SAVING QUESTIONS FOR REVIEW.

An assignment that the court erred in his charge to the jury is too general to be considered.

4. EVIDENCE — USUAL METHODS — CONTRIBUTORY NEGLIGENCE — PERSONAL INJURIES.

Testimony of plaintiff, in an action for personal injuries, that he uncoupled certain cars in the usual way, and the business of the railroad could not be conducted if the conductor waited to make a particular examination of each car, was not objectionable.

5. SAME—RULES.

Nor was it erroneous to exclude from the evidence rules of defendant which required no more than the law in their absence required.

Error to Shiawassee; Miner, J. Submitted June 21, 1911. (Docket No. 125.) Reargued October 17, 1911. Decided November 3, 1911.

Case by Chase Van Leuvan against the Ann Arbor Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Gustavus Ohlinger* and *Seth Q. Pulver* (*Alex L. Smith*, of counsel), for appellant.

*Frank H. Watson* and *Odell Chapman*, for appellee.

Blair, J.   This action is brought by plaintiff to recover for a personal injury suffered while in the employ of defendant, on February 15, 1907.

At the time of the injury, plaintiff was 43 years of age, and had been in railroad service for about 24 years.   He had held successively the positions of section foreman, brakeman, switchman, and yardmaster.   At the time of the accident, plaintiff was serving as a conductor, and had held that position for about seven months.   On the night of February 14, 1907, plaintiff brought into Cadillac a train of cars which he had picked up a few hours before at various points south of that station.   The train was backed into the side track at Cadillac.   The tracks run north and south, and the train was headed north.   Three cars had been set out on the side track, and then plaintiff discovered another car which was to be left at Cadillac, as to which he testified:

"* * * And in this train, about the middle of it, I should think, when we came to it, was this car that I went to uncouple, and the latch was gone.   The car was a gondola, a coal car, and the operating lever fits right onto the end of it.   * * *   You raise the handle up and shove it just a little bit forward, and there is a latch that is supposed to hold it so you can release, and it will unlock,   * * *   and the latch was gone.   * * * That necessitated my going on the other side and uncoupling from the opposite side.   The operating chain by which you draw the bolt was broken, and I couldn't uncouple from that side.   I held the lever up in my hand.   That was the only way to do it.   It was necessary to hold the lever up by my hand, so that it would stay unlocked, so that the drawbars would stay unlocked.   When we were shoving down, we hit some cars that were behind us; that is, went into them.   We were going along and uncoupling these cars that I was in between.   The cars came together and caught my arm."

This car was identified by initials and number as D. S. 9682.   The train was backing upon the switch track. This car, as well as the one ahead of it, which was identi-

fied by the initials D. T. & I., was provided with the regular safety appliance couplings.

The collision came just as plaintiff, who was walking beside the car, was uncoupling, and the drawhead of the opposite car came out, because certain bolts were broken and let it drop down.

"*Q.* I wish you would describe the character of that break and its appearance, whether it was fresh or old?

"*A.* Why, some of them were pretty near broke off, and there was two or three that was only half broke off, but they looked to be old, rusted; they were old breaks.

"*Q.* Were those breaks there where they were pretty near off; where they were broken so they hung by a small portion? State whether it was a new or old break.

"*A.* It was an old break.

"*Q.* So were the rest of them?

"*A.* Yes, sir."

Counsel for defendant and appellant ask for a reversal of the judgment upon the following grounds:

(1) Failure to prove the defect and negligence alleged; (2) contributory negligence of plaintiff; (3) error in the charge of the court; (4) error in admitting and rejecting evidence; (5) the weight of the evidence; (6) improper remarks of counsel in the presence of the jury and in argument.

1. The declaration, after alleging the duty of defendant, under section 5511, 2 Comp. Laws, to furnish safety coupling devices and keep them in reasonable repair, and the failure to perform such duty, proceeds as follows:

"* * * But said defendant left said coupling in such defective manner that it could not be operated, except by raising up the lever and holding said lever in place by hand, which necessitated this plaintiff placing his hand and arm between the cars, there being no other way to perform said coupling; and, to wit, the date aforesaid, it became necessary, while in the yards at Cadillac, Mich., in switching said car having the coupling aforesaid, in and about the ordinary work of defendant's business, to uncouple said car, and there being no other way to per-

form the work said plaintiff was compelled to hold up said coupling lever with his hand, and bring his arm between said cars and another car; and when said cars which were in use in the switching aforesaid were run against another car in the ordinary manner the drawhead in the car aforesaid named, which was equipped aforesaid, broke and came off on account of said drawhead, and the bolts thereof with which it was bolted to the car had become worn out, were cracked and broken, and had been so cracked and broken for a long space of time, to wit, three months, so that said break in said bolts had become rusty and corroded with rust, which on account thereof broke and dropped down on said car and permitted the car which plaintiff was operating and holding up said rod as aforesaid, and the end thereof collided with the car ahead of it, and the breaking of said drawhead allowed the end of the two cars to come together and thereby crushed the left arm of this plaintiff, rendering amputation at the elbow necessary, and plaintiff was thereby deprived of his left arm."

The plaintiff testified that the bolts referred to were the bolts that held the drawhead in place. While, technically, these bolts were no part of the drawhead, and the drawhead itself was in good condition, and the portions of the declaration allege the failure of duty to be in furnishing a defective drawhead, we think the portion of the declaration quoted sufficiently apprised the defendant that plaintiff claimed the defective bolts to be a proximate cause of the accident, as necessary to the proper retention of the drawhead in its position. We are satisfied from the course of the trial that defendant was not surprised by the alleged variance between the testimony and the allegations in the declaration, and that there was no prejudicial error in refusing to direct a verdict on this ground.

2. The testimony tended to show, and the jury have found, that the work of switching was being done in the customary way; that, except for the defective bolts, the position of plaintiff with his hand on the lever was a safe position; that the defects were not likely to be discovered by one performing plaintiff's duty in the usual way. The plaintiff had a right to rely on defendant's performance

of its duty, in which event his position was a safe position, such as a reasonably prudent man might adopt, although there were other methods which, because of defendant's negligence in the particular case, would have been safer. The court did not err in submitting this question to the jury. *Hewitt* v. *Lumber Co.*, 136 Mich. 110 (98 N. W. 992); *Gillespie* v. *Railway Co.*, 150 Mich. 303 (113 N. W. 1116).

3. The only assignment of error concerning the charge is as follows:

"(35) The court erred in his charge to the jury."

This assignment is manifestly too general and indefinite to require further consideration.

Under this head, counsel refer to the refusal to give their requests to charge, as follows:

"The court further erred in refusing to give defendant's requests to charge. We call attention particularly to requests numbers 7, 8, and 9. These, we submit, correctly state the law under the decision of this court in the *Wight Case*, 161 Mich. 221 [126 N. W. 414]."

The defendant's fifth request was given by the court as follows:

"If you find from the evidence that the injury sustained could have been avoided if the plaintiff had stopped the train before attempting to uncouple the cars, or could have been avoided if he had signaled the train to stop before it hit the other cars on the track, and that an ordinarily prudent man, under the existing conditions and surroundings, and possessing the same knowledge of conditions which the plaintiff had would have adopted one of those courses of action, then your verdict will be for the defendant."

The defendant's fifth request to charge, which covered the ground of the seventh and eighth, contained a qualification which was improperly omitted from the seventh and eighth. The ninth request was also properly refused as conflicting with the doctrine of the *Hewitt* and *Gillespie cases* above cited.

4. Complaint is made that plaintiff was permitted to testify, against objection, that the business of the road could not be transacted if the conductor stopped to make a particular examination of each car, and that the switching was done in the customary way. We find no error in these rulings. The plaintiff was an expert railroad man of long experience, was familiar with the customary mode of doing the work he was engaged in at the time of the accident, and it was material and proper for him to show that he was performing his work in the usual way, which would not admit of his making a minute inspection of the draught rigging of each car. The exclusion of defendant's rules 105 and 106 was not prejudicial error, since they required no more than the law would require in their absence. The question to the defendant's witness, Watson, was proper on cross-examination.

5. We are also of the opinion that the court did not err in refusing a new trial on the ground that the verdict was against the weight of the evidence. There are no other questions presented by the brief which, in our opinion, require consideration.

We find no prejudicial error in the record, and the judgment is affirmed.

OSTRANDER, C. J., and BIRD, STEERE, MOORE, MC-ALVAY, BROOKE, and STONE, JJ., concurred.