INGERSOLL v. DETROIT & MACKINAC RAILWAY CO.

1. RAILROADS—MASTER AND SERVANT—LOGGING ROADS.
     On a spur used for logging purposes less than twelve miles in length, having no switches, stations, or regular stopping places, telephones, telegraph, or schedule trains, the general rules in use for the operation and maintenance of main lines of railroad are impracticable and inapplicable.

2. SAME—NEGLIGENCE—RISKS ASSUMED—DIRECTING VERDICT.
     It was error, in an action for the death of a railroad employé, killed in a collision between a work train on which he was riding along such spur or branch line, with a loaded car left

on the track, at night, to refuse to charge the jury that the notice and warning possessed by plaintiff's decedent, relative to the conditions and system of operating the branch line, and the custom of leaving cars on the line without lights or warning signals, barred plaintiff's recovery.

Error to Ogemaw; Sharpe, J. Submitted June 20, 1911. (Docket No. 42.) Decided February 10, 1912.

Case by Elbert V. Ingersoll, as administrator of the estate of William Quigley, deceased, against the Detroit & Mackinac Railway Company for the wrongful killing of decedent. Judgment for plaintiff. Defendant brings error. Reversed and no new trial ordered.

For previous decision in this case, see *Ingersoll* v. *Railway Co.*, 163 Mich. 269 (134 N. W. 441).

*Charles R. Henry* and *Guy D. Henry* (*James Mc-Namara*, of counsel), for appellant.

*Hall, DeFoe & Henry*, for appellee.

McALVAY, J. This suit was brought to recover damages for the death of plaintiff's decedent, claimed to have been caused by the negligence of defendant. The facts of the case are as follows: Plaintiff's decedent, William Quigley, was on November 6, 1906, at work as a brakeman for defendant company on a spur branch of its railroad known as Gates' branch, which extended from a station on its main line called South Branch, into the timber towards the north about 10 or 12 miles. The sole purpose of this spur track was to bring out forest products to the main line, and on it no regular trains or trains of any kind were operated according to any schedule or timetable. This spur track was connected with the main line by a switch and all along its line it had been customary at any time, when requested, to take in cars which had been ordered for loading, and place them at any place where the person ordering the car might designate. It

was a single track its entire length, except at one place towards the upper end where there was a switch. There were loading grounds wherever the forest's products might be placed throughout its entire length. This placing of cars for loading was usually done by the freight engine and crew which ran a freight train regularly between Rose City and Emery Junction on the main line. On the day when the accident occurred, a gondola car which had been ordered was placed on this track for the man who had ordered it for loading, and it had been loaded with mine props and left on this track. The loading had been finished about 4 o'clock in the afternoon. It appears that it had always been the custom to leave cars along this track without lights or other warning, and this car had no lights or warning, upon or near it to indicate its presence.

On this day the work train and construction crew had been engaged in extending this spur track further north towards a mill, and had been so employed for two or more days. This work train contained cars for sleeping and eating accommodations for the construction men and train crew, and for the purpose of keeping them supplied with food it was necessary to go to South Branch for supplies. The engine tender and way car were making a trip for this purpose at the time of this accident. The way car was being pushed by the engine which was headed towards South Branch. This could have been changed when this one switch was reached and the engine and tender placed ahead, but it was decided before starting that the engine should push the way car the entire distance. Plaintiff's decedent had ridden down with this train with the cars in the same order two days before when loaded cars were found on the track and taken to South Branch. He also knew that while they were extending the branch, cars would from time to time be put in on this track as usual. On the night in question he was told by the engineer who was in charge of the train to keep a sharp lookout for cars or anything else on the

track.    He rode on the platform in front of the way car
with a hand lantern, acting as a lookout for cars on the
track, and had signaled when they left camp, and gave
the signal to back up.    His signal could be seen from the
engine.    The train was going between five and eight
miles an hour.    Mr. Wrobleski, the foreman of the con-
struction men, was also at the time riding on the platform
with deceased.    The record shows that on this evening it
was not very dark; that one on lookout with a lantern
could see several car lengths ahead; also, that some light
was given by the headlight of the engine, which was im-
mediately behind the way car, shining through the win-
dows in each end of the car.    This train had proceeded
two or three miles when without notice or warning of the
approaching danger from the lookout to the fireman or
engineer the front end of the way car struck the loaded
gondola.    Plaintiff's decedent was crushed, and died a
few days later from the injuries he received.

The trial resulted in a verdict for plaintiff, upon which
a judgment was entered.    Defendant asks this court for
a reversal of this judgment, assigning errors upon certain
rulings and instructions of the trial court during the trial.

The contentions of the defendant, are:

(1) That such a logging branch of a railroad as the one
in this case is inherently different from a railroad in gen-
eral use; that it does not come within the ordinary rules
and principles governing main traveled lines of a commer-
cial road; that a railroad company is not held to so great
a degree of care to employés working upon such a branch
as to those who work upon the main line of the road.

(2) That as a matter of law upon the undisputed facts
in the case plaintiff cannot recover because of the contrib-
utory negligence of plaintiff's decedent.

(3) That plaintiff's decedent, because of his familiarity
with the work, the instructions he had received, and the
notice he had of existing conditions, assumed this as one
of the risks of his employment.

The negligence relied upon by the plaintiff is not be-
cause of any unsafe condition of the track, but in leaving

upon this track a loaded car without lights or other warning to notify the crew of the work train of its exact location. It is apparent that in case of a woods or logging spur like this Gates' branch, consisting of a single track without switches, running its entire length through practically a continuous loading ground, without stations or regular stopping places of any kind, without any regular trains or schedules, and without telephone or telegraph system or general rules or orders, and conducted in the manner and for the sole purpose as stated, the general rules applicable to the conduct of general railroads as to the degree of care to be used for the safety of employés cannot be applied. To require the same care obviously would be requiring the performance of the impossible. This court has several times held that railroad companies are not held liable to the same degree of care in maintaining their side tracks, as in maintaining their main lines. *Michigan Central R. Co.* v. *Austin,* 40 Mich. 250; *Batterson* v. *Railway Co.,* 53 Mich. 125 (18 N. W. 584); *Hewitt* v. *Railroad Co.,* 67 Mich. 61 (34 N. W. 659). In so doing the court has recognized a difference in importance and general uses between the main lines and the side tracks. Such distinction is all the more apparent when the difference between the uses and necessities of the main line of a railroad and a spur branch used only at irregular intervals for bringing out forest products is sharply presented as in this case.

It appears undisputed from this record that the universal custom and practice in operating trains upon spur branches similar to this one is wholly different from that upon main lines, and is identical with the manner in which this spur branch was operated; that it is customary to leave cars standing upon the track as in this case without lanterns or other markers upon them, without torpedoes or fuses on either side of them, all of which are usual and required upon lines with scheduled trains, stations, depots, etc. The reasons for such custom and practice are obvious. The cars are isolated in a region sparsely inhabited or

entirely uninhabited.   It would not be practicable to put men on to maintain flags, lanterns, and other markers or warnings along such a line, and without men so employed lights would go out, and other markers would be subject to removal and destruction.   In the instant case it appears that plaintiff's decedent was informed and knew of these conditions from statements made in his presence and from personal experience shortly before the accident.   It further appears that on the day in question with this knowledge of the conditions along the track he desired the train to be run in the order in which it did proceed, rather than to have the way car put behind the engine; that, before starting, he was charged by the engineer to look out for cars on the track, and then took his position where he was in full control of the situation.   The dangers before him, of which it appears he knew, were incident to his employment.   He gave the signals for starting and backing and the train proceeded.   In so doing with full knowledge he assumed the risk of all such dangers incident to the employment which he knew to exist.   *Harrison* v. *Railway,* 137 Mich. 78 (100 N. W. 451); *Bradburn* v. *Railroad Co.,* 134 Mich. 575 (96 N. W. 929).   The court refused to charge, as requested, that this spur branch was not of such a character as required the same degree of care to employés operating it as to those employed on the main line, and that the notice and warning given to plaintiff's decedent was sufficient, and relieved defendant from liability.

The propositions contained in such request are established in this case.   Such spur lines are inherently different from the main lines, or those parts of railroads operated the same as main lines, and the reasons and conditions which require the ordinary rules and principles governing the latter relative to care of employés do not apply to the former.   A system of warning and notice of dangers to its operatives had been adopted, which appears to have conformed with the general custom and practice upon branches

of this character, and commensurate with the requirements of the business. The request was warranted upon the undisputed facts, and the court was in error in refusing to give it.

The question of the contributory negligence of plaintiff's decedent need not be considered.

The judgment is reversed, and no new trial granted.

By a stipulation STONE, J., is substituted for the late HOOKER, J., who sat in the case.

MOORE, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.