ROBBINS *v.* MAGOON & KIMBALL CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION LAW — DEFENSES—ASSUMPTION OF RISK—ANIMALS.

In an action for the alleged negligent death of defendant's employee, caused by the kick of a mule, where defendant had not elected to come under the provisions of the workmen's compensation law (Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5423 *et seq.*), the defense that plaintiff's decedent had knowledge of the vicious character of the mule and assumed the risk, is not open to defendant. Act No. 10, Extra Session 1912, pt. 1, § 1, subd. *c.*

2. SAME—EVIDENCE—CONJECTURE.

*Held,* that the evidence supported the conclusion that the cause of death was a kick by a vicious mule, as alleged.

3. EVIDENCE—OPINION EVIDENCE—VICIOUS MULE—ANIMALS.

On the issues as to whether the mule was vicious and as to whether defendant's servants knew of its alleged vicious propensities, testimony that it had a bad eye, that it kicked at witness, that witness could tell by its look that it was not a safe animal, was admissible, as disposition of animals is judged, in part, at least, by appearance and movements.

4. SAME—PHYSICIANS—SIMILAR INJURY.

Where it was plaintiff's theory that the kick of the mule injured the spleen and kidney and caused the death of

decedent, although it broke no bones and left only slight marks upon the body, evidence of a physician that such a case had occurred within his personal observation was admissible to meet the contention of defendant that the result attributed to the kick was improper because no external evidences of injury and no broken bones were found.

5. APPEAL AND ERROR—HEARSAY—EVIDENCE.

Where no objection was made in the court below that the cause of the injury in the related case was hearsay, and no motion to strike for that reason was made, the judgment will not be reversed for such alleged error, raised for the first time in this court.

6. TRIAL—ARGUMENT OF COUNSEL—CURING ERROR.

Where the court at once advised the jury that alleged improper argument of counsel should not have been made, the error, if any, was cured.

7. SAME—INSTRUCTIONS.

It was not erroneous for the court below to charge the jury that the accident naturally appealed to the sympathy; that he would not ask them to cast it aside, but to govern it by their oaths, judgment, reason, and charge of the court.

Error to Muskegon; Sullivan, J. Submitted June 19, 1916. (Docket No. 62.) Decided September 26, 1916.

Case by William A. Robbins, administrator of the estate of William J. Robbins, deceased, against the Magoon & Kimball Company for the negligent killing of plaintiff's intestate. Judgment for plaintiff. Defendant brings error. Affirmed.

*Kleinhans, Knappen & Uhl,* for appellant.

*John G. Anderson* and *Charles B. Cross,* for appellee.

OSTRANDER, J. The principal contention of appellant is that there was introduced by plaintiff no testi-

mony tending to prove the negligence of the defendant. It appears that plaintiff's intestate was employed by defendant as helper or assistant to a teamster, who was in charge of a wagon and a team of mules used in delivering ice. It is alleged that one of the mules was vicious and in the habit of kicking, and that he kicked plaintiff's intestate, inflicting injuries which resulted in his death. This was in June, in the year 1913. Knowledge that the mule was vicious and in the habit of kicking is imputed to the defendant from the fact that the teamster possessed such knowledge. Upon this proposition the controlling rule was stated and applied in a former decision in this case. 186 Mich. 672 (153 N. W. 13). The cause has again been tried, and it is now contended that, assuming that the knowledge of the teamster was possessed by the defendant, no negligence of defendant is made out, because no breach of any duty owed to plaintiff's intestate has been proven. This proposition is rested upon another proposition or rule and upon a fact. The fact is that plaintiff's intestate knew about and had been told of the alleged vicious propensity and habit of the mule; the rule or proposition is that a master is not bound to furnish absolutely safe instrumentalities for conducting his business to his servants, and, as regards a servant who fully understands the perils to which an instrumentality exposes him, it is not negligence to furnish or to continue to use such instrumentality.

The point cannot be discussed without reference to Act No. 10, Extra Session 1912, which as to this defendant, which had not elected to be governed by the act, and in this case forbids the defenses: *First*, that the employee was negligent, unless wilfully so; *second—*

"that the employee had assumed the risks inherent in or incidental to, or arising out of his employment, or

arising from the failure of the employer to provide and maintain safe premises and suitable appliances." Act No. 10, Extra Session 1912, pt. 1, § 1, subd. *c* (2 Comp. Laws 1915, § 5423).

Counsel for appellant assume, in the argument made, that the mule, in the defendant's business, was an appliance, or instrumentality, and that it was an unsafe and unsuitable one. They cannot, I think, resist the conclusion that it was negligence to furnish such an instrumentality, except by using, in favor of defendant, the fact that plaintiff's intestate knew that the instrumentality was unsafe. The principle deduced and stated in *Ragon* v. *Railway Co.,* 97 Mich. 265, 273 (56 N. W. 612, 614, 37 Am. St. Rep. 336), is "that obvious imperfections in methods or machinery, existing at the time of the employment, cannot be made the basis of a liability in favor of an employee who suffers an injury in the course of his employment, for the reason that the employer has a right to have and use imperfect methods and tools, and to ask others to enter his employ to aid him in such use, and that in so doing he does not undertake to insure the employee"—is one an element of which is an acceptance of whatever risk there is by the employee. In *McGinnis* v. *Bridge Co.,* 49 Mich. 466, 473 (13 N. W. 819, 821), no different principle was stated in saying that:

"When it appears the employee is aware, as the plaintiff was, of the risks to which he exposes himself in the service, and consents to encounter them, his employment subject to the risks cannot be treated as a breach of duty."

It is true that "the three principles—negligence, contributory negligence, and assumed risk—are consistent," but not identical. *Bradburn* v. *Railroad Co.,* 134 Mich. 575 (96 N. W. 929). But to hold that conduct which is not negligent because the employee assumes or consents, impliedly or actually, to share a

risk, is not negligent in view of the statute is to allow a defense which the statute refuses. The employer may not now safely invite the employee to share with him "the risks   *   *   *   arising from the failure of the employer to provide and maintain safe premises and suitable appliances."

It is said the cause of death is purely conjectural. There was, however, testimony supporting the conclusion that the cause of death was that alleged, namely, a kick by a vicious mule.

The principal issue of fact was whether the mule was vicious. With this went along another issue, namely, whether defendant's servant, or servants, knew of the alleged vicious propensities of the animal, of his propensity to kick, that he was a kicking mule. Witnesses said that the mule had a bad eye—a wicked look in his eye. One witness said he was afraid of the animal, but he gave as a reason for fear that the mule kicked at him, and further stated that he had refused to "hook" him up. Another witness testified that he could tell by the mule's looks that he was not a safe animal. Objections to the testimony referred to were made, and exceptions to the rulings admitting it were taken. I have regarded it as matter of common knowledge, at least among those accustomed to driving and handling horses and mules, that vicious propensities, as to bite and kick, were likely to be manifested in the general demeanor of the animals. The eyes and various movements which they make convey the impression, not always entirely reliable, that they are gentle and can be handled, or otherwise. A buyer, or one charged with handling animals, would judge disposition, in part at least, by appearance and movements, and act accordingly. The testimony objected to furnished to the jury no means of judgment other than those which ought to be and are employed in such cases.

It is plaintiff's theory that the kick of the mule, although it broke no bones and left no considerable, if any, external marks upon the body of plaintiff's decedent, injured the spleen and a kidney, and caused death. A physician, testifying for plaintiff, was permitted to say that such a case had occurred within his personal experience. It was objected that evidence of specific cases was not competent to prove the cause of injury in the particular case. It appears to have been urged that the result attributed to the kick in the case at bar could not be properly so attributed because no external evidences of injury and no broken bones were found. The experience of a medical man in a similar case ought to affect the judgment of a jury respecting such an issue. It is urged in this court that it appears from his testimony that the witness did not know that in the specific case related the injury was caused by a kick. His testimony supports the inference that the cause of the injury—the witness in that case removed the kidney of the woman— was not within his personal knowledge, but was related to him. No such objection was made in the trial court, and no motion to strike out the testimony for any such reason was made. What might have been developed, or what further testimony introduced upon such an objection being made, we cannot know. The judgment should not be reversed for any alleged error in admitting or in rejecting testimony.

The assignment of error based upon an exception to alleged improper argument of counsel for plaintiff may be passed without discussion. It is doubtful if the argument should be classed as improper, and, in any event, the court advised the jury, at once, that it was improper, and ·that counsel should not have made it.

In a single respect the charge of the court is criticised in the brief. The jury were told that:

"There has appeared here in the trial of this case his father and his mother, fine, estimable appearing people, naturally appealing to our sympathy. The unfortunate accident and all that appeals to our sympathy; you desire to render assistance if we might, to any one that may have lost a son. That sympathy wells up in the hearts of every human person. I would not have you cast it aside. That would be asking you to do more than you can do, but I want you to govern it, govern it by your oaths, by your judgment, by your reason, by the charge of the court."

The criticism is that its effect was "to instruct the jury to start out with their sympathies as a basis and to render assistance to the bereaved 'if we might,'" and it is claimed that sympathy is reflected in the verdict of the jury. The trial judge may have been impressed that in the circumstances it was advisable to remind the jury of their duty and their oaths, contrasting duty and sympathy, and it is quite fair, I think, to say that the language used was perhaps as effective for this purpose as could have been employed.

The case is apparently a hard one, for defendant if the judgment stands, for plaintiff if it does not stand. As the law is, no reversible error appearing, the judgment must be affirmed, with costs to appellee.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.