WILLIAM RAGON v. THE TOLEDO, ANN ARBOR & NORTH MICHIGAN RAILWAY COMPANY.

[See 91 Mich. 379.]

*Master and servant—Railroad companies—Negligence—Assumption of risk.*

1. Plaintiff, while attempting in the day-time to uncouple a moving freight car from the engine in order that the car might be left on a side track, was injured by reason of stepping into an unfilled space between the ties, near the rail, from two to four inches deep, caused by a failure to ballast the side track the whole width. The side track had been in that condition during the time of plaintiff's employment, and he had passed the place of the injury frequently in the discharge of his duties, but testified that he supposed the track was smooth. And it is held that there was a failure to show negligence on the part of the defendant; that the plaintiff was, or ought to have been, familiar with the side track, and, if he was not, common prudence dictated that he should not venture between the moving car and engine without first looking under the car to examine the character of the road-bed, all of which defendant had a right to expect of him; citing *Gardner v. Railroad Co.*, 58 Mich. 591; *Grand v. Railroad Co.*, 83 Id. 571.

2. The following propositions are summarized from the opinion of Chief Justice HOOKER:

*a—*While railroad companies are required to provide reasonably safe appliances, and keep them in repair, and provide their employés with a reasonably safe place in which to do their work, so as not to expose them to unnecessary danger, it is not within the province of courts or juries to prescribe the manner of using their tracks, or the character of their appli-

| | |
|---|---|
| 97 | 265 |
| 105 | 548 |
| 97 | 265 |
| 107 | 542 |
| 108 | 12 |
| 97 | 265 |
| 119 | 86 |
| 97 | 265 |
| d121 | 215 |
| 97 | 265 |
| f122 | 175 |
| j122 | 193 |
| 97 | 265 |
| 127 | 206 |
| 97 | 265 |
| s56NW | 612 |
| 132 | 2540 |
| d133 | 2155 |
| 133 | 1568 |
| 97 | 265 |
| 134 | 1580 |
| 97 | 265 |
| 137 | 1 85 |
| 137 | 2308 |
| 97 | 265 |
| 140 | 6 |
| 97 | 265 |
| 142 | 1346 |
| 97 | 265 |
| 147 | 2464 |
| 97 | 265 |
| d152 | 281 |
| 153 | 2 35 |

ances, by verdicts and judgments which disregard their right to conduct their business in the manner usual with well-managed roads, and as good railroading requires.

*b*—Obvious imperfections in methods or machinery, existing at the time of the employment, cannot be made the basis of a liability in favor of an employé who suffers an injury in the course of his employment, for the reason that the employer has a right to have and use imperfect methods and tools, and to ask others to enter his employ to aid him in such use, and in so doing he does not undertake to insure the employé.

*c*—An employé may contract to use defective machinery, and where he knows of the defect, and uses the machinery voluntarily, the law warrants the inference that he assumes the ·risks incident to such use.

*d*—This doctrine does not give unlimited immunity to the employer, but is shaded down to cases where the want of such knowledge precludes the inference, and makes the employer liable; but this does not justify carelessness on the part of the employé, as the employer has a right to expect him to be alert to inform himself of existing conditions, and he cannot attack the employer from the shelter of unjustifiable ignorance of the business, machinery, and methods which he is employed to use.

Error to Shiawassee.    (Newton, J.)    Argued April 27, 1893.    Decided October 27, 1893.

Negligence case.    Defendant brings error.    Reversed. The facts are stated in the opinion.

*Lyon & Hadsall* (*Alex. F. Smith*, of counsel), for appellant.

*Watson & Chapman*, for plaintiff, contended:

1. Plaintiff testified positively that he knew nothing about the dangerous condition of the track, and showed by himself and a large number of witnesses that the injury he received was in consequence of an increased risk, one not ordinarily incident to the employment, growing out of the master's negligence; and the burden of proof is upon the master to show that the servant knew of and understood the increased danger; citing Cooley, Torts, 661 *et seq.*; *Swoboda v. Ward*, 40 Mich. 420.

2. When defendant employed plaintiff, it assumed the duty of providing and keeping its road-bed and track in a reasonably

safe condition, so as not unnecessarily to enhance the danger attending his employment; and plaintiff assumed the natural risks of his employment, but not such risks as resulted from the negligence of the defendant in failing to perform said duty: citing *Railway Co. v. Cagle*, 53 Ark. 347; *Railway Co. v. Jones*, 75 Tex. 151; *Southerland v. Railway Co.*, 43 Fed. Rep. 646; *Railway Co. v. Overheiser*, 76 Tex. 437.

HOOKER, C. J.   The plaintiff, a brakeman upon defendant's freight train, obtained judgment in the circuit court for an injury sustained by being run over by his train at Durand.   Defendant's counsel contend that the judge should have directed a verdict against the plaintiff.

It became necessary to leave a car upon the defendant's side track, and, after setting the switch, the plaintiff signaled to the engineer to back up, which he did, and plaintiff stepped between the car and the tender to uncouple the car.   Having some difficulty, and being near the switch, he stepped out to avoid the danger of walking over the switch bars, entering again after the car had passed them.   No one saw the accident, but plaintiff states that he stepped into an unfilled space between the ties, and before he could extricate his foot it was caught by the brake-beam of the tender, at the heel, and his toe dragged along the track.   At this time he was inside the main track, and, realizing that he was near the frog, he threw himself over the rail, sacrificing his foot rather than his life.

At the outset a question of variance arises.   The first count of the declaration states that defendant permitted a deep hole or rut to exist in its track, into which plaintiff stepped.   A second count states it as existing in the side track, between the ties, which space it was defendant's duty to fill with dirt.   The alleged variance consists in the failure of the plaintiff to prove the existence of any definite deep hole in the track.   He testifies that he did not see the hole, but that he stepped in one, and was

caught. He attempts no description of its size or depth, further than to say that he thought he went down about eight inches, and claims to know there was one only by reason of having stepped into it. He does not fix the exact location of it. Other testimony on the part of the plaintiff tended to show that the spaces between the ties had not been filled with dirt in the vicinity of the place of the accident, and between the place where the foot was cut off and the switch. This testimony fairly tended to prove that the spaces were filled at the middle of the ties, but at the rail the dirt was from two to four inches below the top of the ties. From the very nature of railroads, the hole in the track mentioned in the declaration must have been between the ties, and evidence that, for a space of 20 feet or more, the ballast did not fill the spaces, tended to prove the existence of a number of holes. Upon plaintiff's theory he stepped into but one hole, and the fact that he could not tell just where it was should not prevent recovery of his damages if he were lawfully entitled to them. If it turned out that there were several holes, that fact was not inconsistent with his claim, but tended to support the allegations that a hole existed, and that the spaces were not filled with dirt. It is not a case of proving a number of defects as a ground of inference that another distinct defect existed, but it was showing that several defects existed, one of which might have caused the injury.

This case went to the jury upon two possible theories, viz.:

1. That the plaintiff stepped into a hole about eight inches deep in defendant's track, which track was otherwise smooth and in good condition.

2. That the road-bed was in bad condition for want of ballast, leaving places between the ties, into one of which plaintiff stepped, and that his foot was caught by reason of that fact.

The first count was supported only by the testimony of the plaintiff, if it can be said to have been supported by proof. He testified that he stepped into a hole about eight inches deep. He said that, so far as he knew, the track was otherwise smooth and in good repair, and that he never saw the hole; that he only knew of its existence by stepping into it. No other evidence in the case shows the existence of any isolated or unusual hole, and this testimony was as consistent with one theory as the other, and does not tend to establish the theory of an isolated or unusual pitfall; and plaintiff's counsel seem to have relied upon an ability to show a general want of ballast upon the side track in the vicinity of the accident. Hence the jury should not have been permitted to consider this theory.

Upon the other theory, there was proof that went so far as to show that the side track upon which the accident happened was not ballasted to the top of the ties for their whole length, but that, while the dirt covered the tie in the middle of the track, it sloped towards the sides of the track, so that, at the rail, it was from two to four inches below the iron, thus exposing the tie at that point to such depth, and that such was the condition in the vicinity of the accident, and had been since the road was constructed.

This raises the questions:

1. Should the trial court have determined, as matter of law, that this road was in a reasonably good condition?
2. Was the plaintiff in a situation to charge his injury upon defendant?

Adjudications are not wanting upon the subject of the duties of masters in relation to the machinery and places for work furnished to servants; and while a railroad company is required to provide reasonably safe appliances, and keep them in repair, and provide a reasonably safe place

for the employé, so as not to expose him to unnecessary danger, it is not within the province of courts or juries to prescribe the manner of using its tracks, or the character of its appliances, by verdicts and judgments which disregard its right to conduct its business in the manner usual with well-managed roads, and as good railroading requires. Accordingly, it has been held that a railroad company is under no legal obligation to maintain, for the protection of its employés, a station agent at a flag station where there is an unblocked siding; nor is it bound to change its manner of using brakes, or to adopt the most approved methods or appliances, or to discard what are not the safest known. *Hewitt v. Railroad Co.*, 67 Mich. 61; *Illick v. Railroad Co.*, Id. 632; *Fort Wayne, etc., R. R. Co. v. Gildersleeve*, 33 Id. 133.

In the case of *Batterson v. Railway Co.*, 53 Mich. 125, 128, a brakeman was injured while coupling cars at a place where the ties were raised above the surface of the ground. It was held that—

"The risk of such imperfections was one of the risks of the business. It is not shown or claimed that this track was unsafe for any of the ordinary uses of side tracks, and the accident did not arise from any such defect. The lay of the land was such as to be readily seen by any one who passed along the track at ordinary times. The plaintiff knew that the road-bed there was not ballasted, and was bound to know that there might be irregularities of surface anywhere. The chances of such an accident were not such as to suggest danger as very likely. There was, of course, a probability that cars might have to be coupled at one place as well as another, and sometimes when there was not much daylight. But the company had a right to expect that every brakeman would use reasonable care in examining his footings and surroundings, and we think that they cannot be regarded as at fault for not guarding against an occurrence which was as likely to happen in any place where the ground was uneven, and to completely insure against which would require a side track to be as expensively built as a main track. * * * *They had*

*a right to rest on the probability that any one would know what was generally to be seen by his own observation,* or by information from those who were on the spot working with him, and who might fairly be expected to do their duty."

The opinion concludes with the following significant language:

"There is much reason to regard the accident, from plaintiff's own testimony, as the immediate consequence of his hand slipping from the car, and of nothing else. *But we place no stress upon this, because we do not think any case is made out of a violation of duty to the plaintiff on the part of his employers."*

In that case the Court practically said that a jury should not be permitted to pass upon the question whether a railroad company owed a duty to its employés to ballast its side track where it bordered a pond, asserting that a brakeman ought to expect to be upon his guard against inequalities of surface and uneven places. It will not do to say that this decision was based upon the admitted knowledge of the plaintiff, for the Court expressly assert that *no duty existed* to ballast the track, *for the reason that the company had a right to suppose that its employés could and would see the condition of the track,* and govern themselves accordingly, entering between the cars only where it was safe.

*Gibson v. Railway Co.,* 63 N. Y. 449, 452, is another case involving the same principle. A conductor of a freight train, climbing up the outside of a car, was drawn against the roof of a depot. At the close of the plaintiff's evidence, defendant's counsel moved for a nonsuit, upon the ground that *no actionable negligence* on the part of the defendant had been shown. The court said:

"When the deceased entered the employment of the defendant, he assumed the usual risks and perils of the service, and also the risks and perils incident to the use of the machinery and property of the defendant as it then

was, so far as such risks were apparent. Accepting service with a knowledge of the character and position of the structures from which the employés might be liable to receive injury, he could not call upon the defendant to make alterations to secure greater safety, or, in case of injury from risks which were apparent, he could not call upon his employer for indemnity.".

And in the case of *Hayden v. Manufacturing Co.*, 29 Conn. 548, 558, Ellsworth, J., says:

"Every manufacturer has a right to choose the machinery to be used in his business, and to conduct that business in the manner most agreeable to himself, provided he does not thereby violate the law of the land. He may select his appliances, and run his mill with old or new machinery, just as he may ride in an old or new carriage, or navigate an old or new vessel. * * * The employé having knowledge of the circumstances, and entering his service for the stipulated reward, cannot complain of the peculiar taste and habits of his employer, nor sue him for damages sustained in and resulting from that peculiar service."

In *DeForest v. Jewett*, 88 N. Y. 264, a yard in which the deceased worked was drained by some open ditches running across the road between the ties. He should have seen them and known about them, and it was held that plaintiff could not recover. See, also, *Sweeney v. Envelope Co.*, 101 N. Y. 520.

The case of *Gibson v. Railway Co.*, cited above, has a parallel in the case of *Illick v. Railroad Co.*, 67 Mich. 632. This case is even stronger in its support of defendant's contention. A brakeman was climbing a ladder on the car to set a brake, which had been called for by the engineer. He was in the line of his duty. He was drawn against a bridge, and killed. It was shown that this bridge was narrower than the standard width of bridges in use at the time. The Court held as follows:

"The bridge was sound, and safe for the passage of trains, without defect, and in good repair. Whether it was 14 or 24 feet wide was a matter of no concern to the

brakeman, so long as he was not required to occupy a place of danger in the discharge of his duties while passing over it, and this he was not required to do.   *   *   * Railroad companies must be allowed to use their own discretion as to the kind of bridges they will use, and when and under what circumstances they will remove or replace them, while they are safe. Any other rule would be both unjust and oppressive. As between the employers and employed, it is unquestionably the duty of a railroad company to provide a track and equipments which shall be reasonably safe; but this does not oblige the company to make use of the latest improvements, or to change the structures upon its road so as to conform to the most recent or advanced improvements and ideas upon such subjects; neither does good railroading require any such thing.   *   *   * I do not think the record discloses any fault or negligence on the part of the defendant."

Mr. Justice COOLEY states the doctrine thus:

"The terms in which the proposition has been stated will exempt the master from responsibility in all cases where the risks were apparent, and were voluntarily assumed by a person capable of understanding and appreciating them. No employer, by any implied contract, undertakes that his buildings are safe beyond a contingency, or even that they are as safe as those of his neighbors, or that accidents shall not result to those in his service from risks which, perhaps, others would guard against more effectually than it is done by him. *Neither can a duty* rest upon any one which can bind him to so extensive a responsibility. There are degrees of safety in buildings which differ in age, construction, and state of repair, as there are also in the different methods of conducting business, and these, not the servant only, but any person doing business with the proprietor, *is supposed to inform himself about and keep in mind* when he enters upon the premises." Cooley, Torts, 551.

It would seem that we may, from these authorities, deduce the principle that obvious imperfections in methods or machinery, existing at the time of the employment, cannot be made the basis of a liability in favor of an employé who suffers an injury in the course of his

97 MICH.—18.

employment, for the reason that the employer has a right to have and use imperfect methods and tools, and to ask others to enter his employ to aid him in such use, and that in so doing he does not undertake to insure the employé.

Upon the theory of this case which we are now discussing, we think there was a failure to show negligence on the part of the defendant. The plaintiff was, or ought to have been, familiar with the side track, and, if he was not, common prudence dictated that he should not venture between the moving car and engine without first looking under the car to examine the character of the road-bed, all of which defendant had a right to expect of him. See *Gardner v. Railroad Co.*, 58 Mich. 591; *Grand v. Railroad Co.*, 83 Id. 571.

Inseparably connected with this question of negligence is the doctrine that "the employé assumes the ordinary risks and perils incident to his employment." It has been impossible to avoid some discussion of it in the foregoing pages. It is a doctrine as well established as any in the books, that an employé may contract to use defective machinery, and where he knows of the defect, and uses the machinery voluntarily, the law warrants the inference that he assumes the incident risks. It must not be assumed that this doctrine gives unlimited immunity to the master. The doctrine is shaded down to cases where the want of knowledge precludes the inference, and makes the master liable. But this doctrine does not justify carelessness upon the part of the servant. The master has a right to expect him to be alert to inform himself of existing conditions, and he cannot attack the master from the shelter of unjustifiable ignorance of the business, machinery, and methods which he is employed to use. Actual ignorance will not alone suffice to charge a master; the ignorance must also be excusable.

The plaintiff says he supposed the road was smooth, and did not know that there were any holes there.   He had been for some time in the defendant's employ, passing and repassing the yard and switch in question.   It is plain that the condition of this side track could be seen by a casual observer.   Self-preservation should have prompted him to look at this track to see whether it was in such condition as to warrant his going between a moving train and engine, though he had never seen the road before. It was in daylight, and he was not incumbered by a lantern.   But, relying upon a supposed condition, he tells us he entered, and stepped directly into the hole between the ties.   In addition to the authorities cited, see Shear. & R. Neg. § 185; *Foley v. Railway Co.*, 48 Mich. 622; *Piquegno v. Railway Co.*, 52 Id. 40; *Hathaway v. Railroad Co.*, 51 Id. 253; *Michigan Central R. R. Co. v. Austin*, 40 Id. 247; *Viets v. Railway Co.*, 55 Id. 120; *Tuttle v. Railway Co.*, 122 U. S. 189, and cases cited.

The jury should have been directed to find a verdict for the defendant.

The judgment will be reversed, and a new trial ordered.

LONG and GRANT, JJ., concurred with HOOKER, C. J.

MONTGOMERY, J.   This case was once before the Court on demurrer to the declaration, and is reported in 91 Mich. 379.   It was held on demurrer that while "employés may be chargeable with knowledge that side tracks are not always perfect; that they are sometimes constructed over ditches or gullies, and are not always ballasted with the same care that main tracks usually are,"—yet "railroad companies owe it to their employés to protect them from unnecessary and dangerous pitfalls and unusual conditions."

The averment in this declaration was that the railway company permitted a dangerous hole to exist in its track.

The case has been tried before a jury, and it appears that the nature of the defect consisted simply of a want of proper ballasting, the only fair inference from the testimony being that, while the track was ballasted in the center to the top of the ties, at the outer edge and near the rail it was not filled flush with the ties, but that unfilled spaces to the depth of from two to four inches below the rail were allowed to exist. The accident occured in the day-time, when the condition of the track was open to the inspection of the plaintiff. The plaintiff had been in the employ of the defendant for at least six weeks, and his duties would take him back and forth past the place of the injury. He must be. presumed to have been aware of the apparent condition of the side track, and it was further his duty to use reasonable · care in examining his surroundings before attempting to uncouple the car. I think this case falls within the previous adjudications of this Court. See *Batterson v. Railway Co.*, 53 Mich. 125; *Piquegno v. Railway Co.*, 52 Id. 40. See, also, Shear. & R. Neg. § 406. The circuit judge should have directed a verdict for the defendant.

Judgment reversed, and a new trial ordered.

McGRATH, J., concurred with MONTGOMERY, J.