(10 Misc. Rep. 336.)

### McDUGAN v. NEW YORK CENT. & H. R. R. CO.

(Common Pleas of New York City and County, General Term.   December 3, 1894.)

1. MASTER AND SERVANT—CONDITION OF PREMISES—KNOWLEDGE OF SERVANT.
    To one engaging in service with knowledge of an unsafe place or appliance the master is under no obligation to alter or amend the condition of the place or appliance.

2. SAME—RISKS ASSUMED.
    By entering upon the employment with such knowledge, the servant himself assumes the hazards of the dangerous place or appliance.

3. SAME—FAILURE OF SERVANT TO ASCERTAIN DANGER.
    If by due diligence the servant may ascertain the danger, but chooses rather to forbear the exercise of that care, such opportunity of knowledge is the legal equivalent of actual knowledge.

4. CONSTRUCTIVE KNOWLEDGE.
    In law, what a man ought to know he does know.

5. CONTRIBUTORY NEGLIGENCE—WHAT CONSTITUTES.
    Contributory negligence sufficient to defeat an action for negligent injury.

6. APPEAL—VERDICT AGAINST WEIGHT OF EVIDENCE.
    Where plaintiff prevaricates as to a fact fatal to his case, and his own witnesses testify to the fact, the general term should set aside a verdict in his favor as against the weight of evidence.

(Syllabus by the Court.)

Appeal from trial term.

Action by Peter McDugan against the New York Central & Hudson River Railroad Company for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Daniel W. Tears, for appellant.
Gilbert D. Lamb, for respondent.

PRYOR, J.   Manifestly, negligence is not to be imputed to the defendant because of its omission to promulgate rules for the protection of the plaintiff in the performance of his very simple duties, and against the casualty by which he sustained the injury.   Berrigan v. Railroad Co., 131 N. Y. 582, 30 N. E. 57.   The negligence with which the defendant is charged consists in laying its tracks in such close proximity—about seven inches at the place of the accident— as to expose the plaintiff to the danger he incurred.   But the arrangement of the tracks was permanent, existed at the time the plaintiff entered the defendant's service, and was obvious to the eye of any one.   The plaintiff was an experienced brakeman.   For eight days he had worked in defendant's freight yard, for two days and a night about the locality of the occurrence, and for three hours that very morning.   It was broad daylight.   The plaintiff denies knowledge of the condition of the tracks, but nevertheless we are of the opinion that upon this uncontroverted state of fact he has no cause of action.   The action proceeds on the postulate of a violation of a duty on the part of the defendant to the plaintiff.   But to one engaging in service with knowledge of an unsafe place or ap-

pliance a master is under no obligation to alter or amend the condition of the place or appliance. By entering upon the employment with such knowledge the servant himself assumes the hazards of the dangerous place or appliance; and if, by due diligence, the servant may ascertain the danger, but chooses rather to forbear the exercise of that care, such opportunity of knowledge is the legal equivalent of knowledge. In law, what a man ought to know he does know. These propositions are so sustained by adjudication, as to be now settled principles in the law of negligence. "Though it is part of the implied contract between master and servant that the master shall provide suitable instruments and a suitable place for the servant, yet it is the power of the servant to dispense with this obligation. When he assents, therefore, to occupy the place prepared for him, and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to comprehend them, it is not a question whether such place might, with reasonable care and by reasonable expense have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected." Sullivan v. Manufacturing Co., 113 Mass. 396. "There was no danger which, in view of the plaintiff's knowledge and capacity, must not have been well understood by and apparent to him, and there was therefore no negligence on the part of the defendant in exposing him to it." Goodnow v. Emery Mills, 146 Mass. 261, 15 N. E. 576; Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115. "It is the right of the employer to carry on his own busines in the manner that seems best to him, and it is for the workman to determine whether or not he will enter the service. If he does enter upon the service, knowing the risks that he incurs, he must be regarded as having voluntarily incurred such risks." Buzzell v. Manufacturing Co., 77 Am. Dec. 222 (where large collection of cases). "Obvious imperfections in methods or machinery, existing at the time of the employment, cannot be made the basis of liability in favor of an employé who suffers an injury in the course of his employment, for the reason that the employer has a right to have and use imperfect methods and tools, and to ask others to enter his employ to aid him in such use. The doctrine that a servant's want of knowledge of a defect in the appliances furnished by the master precludes the inference of an assumption of risks, and makes the master liable, does not justify carelessness on the part of the servant. The master has a right to expect him to be alert to inform himself of existing conditions; and he cannot attack the master from the shelter of unjustifiable ignorance of the business, machinery, and methods which he is employed to use." Ragon v. Railway Co., 97 Mich. 265, 56 N. W. 612. "The structure was permanent in its character, and the risks resulting from its location were as apparent to the ordinary laborer as to a skilled mechanic or expert. They were visible to all. * * * He took service subject to all risks incident to the position and mode of construction of the station house,

and, if the defendant did nothing after the employment to aggravate the danger, there was no liability." Gibson v. Railway Co., 63 N. Y. 449, 452. A servant who enters upon employment, from its nature hazardous, assumes the usual risks and perils of the service, and of the open, visible structures known to him, or of which he must have known had he exercised ordinary care and observation. Williams v. Railroad Co., 116 N. Y. 628, 634, 22 N. E. 1117, where held error to refuse a nonsuit because "the plaintiff, had he exercised care and observation, must have known that the bridge was not of sufficient height to permit a person to pass under it, standing on the top of a car." The case is distinguished in Wallace v. Railroad Co., 138 N. Y. 302, 33 N. E. 1069, but not so as to affect its analogy to the case under review. "Whatever there was of danger to one engaged in the coupling of the cars in this yard, must have been apparent and obvious to him." De Forest v. Jewett, 88 N. Y. 264, 268; Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. 358; Hayden v. Manufacturing Co., 29 Conn. 548; and collection of cases in Ragon v. Railway Co. [Mich., 56 N. W. 612] 57 Am. St. Rep. 345. The complaint should have been dismissed for insufficient proof of defendant's negligence.

Equally obvious is the infirmity of plaintiff's case in respect of his own negligence. The other men engaged with him in coupling the cars returned safely, and they returned safely because they got on the car before in motion, and by the end ladder. Not so the plaintiff. He got on the car while moving, and he ascended by a side ladder. This was the only car with a side ladder. The car next ahead and the car behind both were equipped with end ladders. Ascending the car before it started, or by an end ladder, he could not have been hurt; and yet he chose the only time and the only method of getting aboard by which he was exposed to the possibility of injury. "The deceased, of his own volition, and without any necessity connected with his duties as conductor of the train, undertook to climb the cars when under way, and just at the point of danger, and, so far as appears, at the only point of especial risk. This he did at his peril," and for this the judgment was reversed. Gibson v. Railway Co., 63 N. Y. 449, 454. So here the complaint should have been dismissed for the contributory negligence of the plaintiff. Wiwirowski v. Railway Co., 124 N. Y. 420, 26 N. E. 1023. In any event, the order denying a new trial should be reversed, because the verdict is against the weight of evidence. Kaare v. Iron Co., 139 N. Y. 369, 377, 34 N. E. 901.

When first on the stand the plaintiff testified, in reply to his own counsel, that: "I was sent on this track 20, along with the rest of the men, to get some cars out, and I went down, and I made one coupling." These men testified that plaintiff was on the engine, and that they "went between the strings of cars on 19 and 20, and as we went along we were obliged to edge through. We could not walk abreast in some places. Some places you might squeeze yourself through without your shoulders squared." Plainly, therefore, if plaintiff accompanied these men, as he and they swore he did, he must have had actual knowledge of the proximity of the tracks, and of the danger he incurred by ascending the car on the side.

Recalled next day by his counsel, he repudiated his former statement, and substituted the incredible story that he approached the place of coupling, not on the engine or with the men, but from another direction, and by walking over the tops of the cars,—a palpable afterthought, to recall the admission of a fact fatal to his case. The proof is irresistible that the plaintiff was apprised of the danger from which he suffered, and that he ventured the risk of boarding the moving car before it reached the place of peril. He must be resigned to the consequence of his foolhardy experiment. Judgment and order reversed, and a new trial awarded; costs to abide the event. All concur.