FRANK YUHA, Respondent, v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

(171 N. W. 851.)

**Damages — negligence — master and servant.**
    In an action brought by the plaintiff against the defendant to recover damages

---

NOTE.—On excessiveness of verdicts in actions for personal injuries other than death, see comprehensive note in L.R.A.1915F, 30.

for carelessness and negligence of defendant in the construction and operation of a certain coal shed, and the failure to maintain the same in a reasonably safe condition so as to protect the plaintiff, its employee, while in the discharge of his duties, the jury returned a verdict in plaintiff's favor and against the defendant for $3,600. *Held* that the verdict is not excessive and is supported by the evidence.

Opinion filed November 23, 1918.   Rehearing denied April 15, 1919.

Appeal from judgment and order of District Court of Divide County, North Dakota, Honorable *K. E. Leighton,* Judge.

Affirmed.

*Greene & Stenersen* and *John L. Erdall (Alfred H. Bright,* of counsel), for appellant.

There is no presumption of negligence on the part of the employer because of the happening of some injury to some of his employees.

The burden is on the employee, in an action to recover for such an injury, to prove negligence.   Warren v. Harlan & H. Corp. Del. 84 Atl. 215; Campbell v. Southern P. R. Co. 21 Cal. App. 175, 131 Pac. 80; Brymer v. Southern P. R. Co. 90 Cal. 496, 27 Pac. 371; Betts Co. v. Hancock, 139 Ga. 198; Root v. Cudahy Packing Co. 88 Kan. 413, 129 Pac. 147; Pellerin v. International Paper Co. 96 Me. 388; Klebe v. Parker Distilling Co. 207 Mo. 480, 13 L.R.A.(N.S.) 140; Gleason v. Missouri River Power Co. 46 Mont. 395, 128 Pac. 586; Marceau v. Rutland R. Co. 211 N. Y. 203; Stearns v. Ontario Spinning Co. 184 Pa. 519, 39 L.R.A. 842, 63 Am. St. Rep. 807.

It is not enough for the plaintiff to show that he was injured, and that there is a suspicion, or even a fair inference that defendant has been negligent; but he must give evidence of some specific act of negligence on the part of the defendant.   Longgrove v. London & R. Co. 16 C. B. N. S. 692; 4 Thomp. Neg. §§ 3767, 3865; Lane v. R. Co. 64 Kan. 755, 78 Pac. 626; Armour & Co. v. Russell (C. C. A.) 144 Fed. 614, 6 L.R.A.(N.S.) 603, 604, and see extended note pp. 602–609.

Defendant is bound to furnish place to work that is reasonably safe only.   Streeter v. West Wheeled Scraper Co. 250 Ill. 244, Ann. Cas. 1913C, 204;   4 Thomp. Neg. § 3774.

The duty of reasonable care does not extend to such care as will reduce the liability of accident to the minimum.   Jungnitz v. Michigan

Malleable Iron Co. 105 Mich. 270, 63 N. W. 296; Stiller v. Bohn Mfg. Co. 80 Minn. 1, 82 N. W. 982; Wood, Mast. & S. § 331; Bailey, Mast. & S. § 57; 26 Cyc. 1106–1108; 3 Elliott, Railroads, § 1274.

The assumption of risk may be free from any suggestion of fault or negligence on the part of the employee. Seaboard Air Line R. Co. v. Horton, 233 U. S. 504, 509, 58 L. ed. 1070, 1071; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 68, 48 L. ed. 96, 100, 24 Sup. Ct. Rep. 24, 15 Am. Neg. Rep. 230; Schlemmer v. Buffalo, R. & P. R. Co. 220 U. S. 590, 596, 55 L. ed. 596, 600, 31 Sup. Ct. Rep. 561; Texas & P. R. Co. v. Harvey, 228 U. S. 319, 321, 57 L. ed. 852, 855, 33 Sup. Ct. Rep. 518; Gila Valley G. & N. R. Co. v. Hall, 232 U. S. 94, 102, 58 L. ed. 521, 524, 34 Sup. Ct. Rep. 229; and cases cited. O'Malley v. Boston Gaslight Co. 47 L.R.A. 161; Streeter v. Western Wheeled Scraper Co. 250 Ill. 244, Ann. Cas. 1913C, 204.

Plaintiff knew the very danger that he complained of as constituting the negligence of the defendant, and it must be held as a matter of law that he assumed the risk. American Bridge Co. v. Valente (Del.) 73 Atl. 400; Elmer v. Mutual S. S. Co. 114 Minn. 257, 130 N. W. 1104; Ragon v. Toledo etc. R. Co. 97 Mich. 265, 56 N. W. 612; La Pierre v. Chicago, G. T. R. Co. 99 Mich. 212, 58 N. W. 60.

*Geo. P. Homnes,* for respondent.

It is the province of the jury to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable prudent men. 18 R. C. L. § 61, p. 547.

The master and servant do not stand upon the same footing, the mere fact that a servant knows the defects of premises does not necessarily charge him with contributory negligence, or the assumption of risks growing out of these defects. Wuotilla v. Duluth Lumber Co. 33 N. W. 553; Union P. R. Co. v. O'Brien, 161 U. S. 451, 40 L. ed. 766, 16 Sup. Ct. Rep. 618; Cleveland R. R. Co. v. Keary, 3 Ohio St. 201.

The law, having consideration for the weakness of human nature, will not require of a person placed in circumstances of sudden danger, confusion, or excitement that deliberate forethought to be expected under other circumstances. Buswell, Personal Injuries, § 142, p. 256; Fero v. Buffalo & State Line R. Co. 22 N. Y. 209; Ernst v.

Hudson River R. Co. 24 How. Pr. 97; Cook v. New York C. R. Co. 3 Keyes, 476; McBrath v. Hudson River R. Co. 32 Barb. 144; Haas v. Chicago, M. & St. P. R. Co. 90 Iowa, 259; Kane v. Northern C. R. Co. 128 U. S. 91.

GRACE, J. Appeal from the judgment and order overruling the motion of the defendant for judgment in said action notwithstanding the verdict or for a new trial.

The action is one brought by the plaintiff against the defendant to recover damages for the alleged carelessness and negligence of the defendant by reason of which the plaintiff received certain injuries to his person. On the 1st day of January, 1917, the plaintiff was in the employ of the defendant and was in charge of the defendant's coal shed at the village of Fortuna, North Dakota. The coal shed was a place where the defendant's engines, or some of them, received coal. It was plaintiff's duty to fill the coal buckets and coal the engines and see that the coal buckets were kept filled. Plaintiff worked on the second floor of the coal shed, which was so constructed that there were two openings for the operation of the derrick in hoisting and lifting the large buckets of coal. Between the two openings there was a plank walk 2½ feet in width. When this walk was originally constructed it was 10 inches wider, a 10-inch plank having been removed, thus narrowing the walk to 2½ feet. The railroad track extended east and west through Fortuna. The coal shed is located in Fortuna, immediately north of the main railroad track. The coal shed is 30 feet long by 18 feet wide. It is open on the south side. There is a first and second floor in the coal shed. There are two openings in the second floor which are located toward the center of the building. One of the openings is on the south side of the shed, and in this opening the derrick or crane works and lifts the buckets of coal through the second opening, which is located immediately north of the opening to which we have referred. Between these two openings, on the second floor, is a narrow walk of 2½ feet. As above stated, to the east and west of these openings is the second floor, upon which the buckets are placed when filled with coal for the purpose of coaling the engines. On the upper floor there is room for only eight buckets; there are twelve buckets used. In coaling freight engines the buckets from the lower floor are used, or quite often used, as

the air from the engines furnishes power to elevate the loaded buckets which are deposited in the engine to be coaled. Otherwise than this, the derrick is operated by cranks which are turned by men. The passenger engines are coaled by use of the derrick being operated by means of a crank operated by men. The opening on the south side of the second floor is about 9 feet, and the other opening north of it is about 9 or 10 feet, and, as the testimony shows, a little narrower the other way. There is also a sidetrack to the north of the coal shed. Upon this track, at times, there stand carloads of coal for use in coaling the engines. Leading from the sidetrack to the coal shed is a small track upon which a small car is operated. The small car is loaded with coal from the car on the sidetrack and run into the coal shed, and the buckets are filled, and as many of the buckets as may be are elevated to the second floor to be in readiness for coaling the engines. To the crane is attached a cable, and the bucket of coal is either elevated from the lower floor to the most northerly opening and thence swung across and deposited on the tender; or the buckets are coaled and swung across and placed upon the floor on either side of the openings on the second floor. After the coal is deposited on the tender, the crane swings back to its original position. In coaling the engines, the bucket and boom are oftentimes pushed by the plaintiff and the fireman. The distance from the upper floor to the lower is 9 feet 3 inches.

On the 1st day of January, 1917, while in the performance of the duties of his employment in coaling an engine, the plaintiff was blinded by coal smoke and steam from the engine driven into the shed by strong wind, lost his footing on the walk on the second floor of the shed, and fell to the floor, a distance of 9 feet 3 inches, thereby sustaining injuries to his head, neck, side, and internally.

The defendant, in its answer, denies negligence on its part and further pleads assumption of risk on part of the plaintiff. The amount of damages claimed in the complaint was $7,500. The case was tried to the jury on June 21, 1917, and a verdict for the plaintiff for $3,600 damages was returned by the jury. On November 1, 1917, the defendant made a motion for a judgment notwithstanding the verdict or for a new trial,—all of which was denied.

The defendant, in its appeal, relies upon six assignments of error and also upon the claim that the evidence is insufficient to justify the

verdict. The trial court sustained the plaintiff's objection to the question asked of the defendant's witness, Michael Donovan, which question was as follows:

"Q. Will you state whether or not the equipment and the plan of the coal shed at Fortuna is of the usual, ordinary character used for the purpose of coaling engines?"

We are of the opinion it was no error in excluding the answer to such question, for the reason that the question and answer were immaterial. One of the main questions in this case is, whether or not the employer had used ordinary care to provide a reasonably safe place for the servant in which to perform his duties. How other coal sheds were constructed, or what they contained, or whether the plan of the coal shed at Fortuna and the equipment therein was of the usual and ordinary character, or corresponding in plan and equipment with other sheds, it seems to us, was immaterial, and the answer to the question above set forth was, by the trial court, properly excluded.

The second question to which the answer was excluded by the court, asked of the same witness, is as follows:

"Q. From your knowledge and experience, would it be practicable or advisable to encircle that deck where the derrick is with railing of any sort?"

And the further question, as follows:

"Q. From your knowledge and experience of such appliances, would it be practicable to operate the apparatus for hoisting this coal successfully or properly if the platform from which this derrick swings were railed in?"

Objection having been made to each of these questions by the plaintiff, the witness was, by the court, not permitted to answer, and we think properly so, for answers to such questions could have been only a conclusion of the witness.

The defendant's fourth assignment of error relates to the overruling of the defendant's motion made at the close of all the testimony, for a directed verdict on the ground that the evidence on the part of the defendant and as a whole fails to show any negligence on the part of the defendant as responsible for or contributing to the injuries sustained by the plaintiff, and for the further reason that the risk of dangers, if any existed, in the occupation in which the plaintiff was employed, was

assumed by the plaintiff. We are of the opinion that the court properly overruled such motion. It also properly overruled defendant's motion for judgment notwithstanding the verdict for a new trial. We are of the opinion that the evidence is sufficient to justify and sustain the verdict of the jury; that the verdict is not against the law, and was not contrary to the instructions of the court.

The question of negligence was one for the jury. If there was any negligence on the part of the defendant and there was competent evidence on the part of the plaintiff to show such negligence, the verdict should be sustained. Plaintiff testified to several changes which had been made in the coal shed since its construction, the most important of which was the removal of a 10-inch plank from the floor between the openings on either side. After the removal of the 10-inch plank there remained, between the two openings, but a narrow walk of 2½ feet along either side of which there was no railing of any kind or character. In view of the extreme narrowness of the walk between the openings, and the distance from the second floor to the first, and the failure to have any method to protect the plaintiff while using such narrow walk in the discharge of his duties, this court cannot say, as a matter of law, that defendant used ordinary care to provide a safe place for its servant, the plaintiff, in which to work; nor that the defendant, as a matter of law, was wholly free from negligence. The jury had all the testimony before it in regard to the narrow walk between the openings, the distance from the second floor to the first floor, and the fact that there was no guard or rail along said walk on either side. All this testimony tended to show negligence on the part of the defendant and failure to use ordinary care to provide a safe place for plaintiff in which to work. The jury, after considering all this testimony, rendered a verdict in plaintiff's favor, thus holding that the defendant was guilty of negligence. In view of the narrowness of the walk between the openings and the long distance from the second floor to the first floor, and the fact that there was no guard or rail of any kind to protect plaintiff, we think the verdict finds sufficient support in the evidence. Whether it was possible for the defendant to place a rail or guard along either side of said walk was a question of fact for the jury. Plaintiff claimed there could have been a railing, if constructed at an angle just the same as the boom. The defendant contends a railing constructed at an angle

as suggested by the plaintiff would render the narrow passageway between the two openings wholly useless and impassable. As we view the matter, these and kindred questions relating to negligence were all for the jury, and were by it determined in plaintiff's favor, and the defendant held to be negligent.

We are further of the opinion that the jury was justified in considering all the facts which were introduced in evidence which in any way tended to show negligence on the part of the defendant, including the failure to use ordinary care to provide a safe place for plaintiff in which to work, and that the court, by an instruction of law, could not take such facts from the jury. If the coal shed, at the time of the coaling of the engine, was filled with smoke and steam escaping from the engine, thus increasing plaintiff's danger of personal safety, and making it more difficult for him to find his way, or if the coal smoke overcame plaintiff, it must be apparent that this condition added to plaintiff's danger, and the jury was at liberty to consider such facts even if the court, by an instruction of law, had withdrawn such fact from the jury. If the facts were such as had direct relation to the accident and were such as were directly connected with the question of negligence of the defendant, they are to be considered by the jury. The jury are the exclusive judges of all facts which have any bearing or relation to the issues involved in the trial, and the court cannot, by an instruction of law, withdraw such facts from consideration by the jury except where they in no way have any relevancy to the issues involved. We do not think the court intended to do this when it gave the following instruction: "You are further instructed that the fact that large quantities of smoke and steam escaping from the engine on this occasion does not, in itself, constitute negligence."

It is true that the escaping of large quantities of smoke and steam from the engine on this occasion does not, of itself, constitute negligence. If, however, the large quantities of smoke and steam from the engine found its way into the coal shed, as the testimony shows it did, and of such density that it overcame plaintiff and he fell from the place where he was working, it is a matter which has a direct tendency to prove negligence on the part of the defendant, and was a question of fact exclusively for the jury.

The testimony shows that the upright which carried the boom and

derrick was slightly out of plumb, and that an iron guard which had once covered one of the cogwheels of the hoisting machinery was missing. There is no direct testimony that any of plaintiff's injuries were caused by coming in contact with this uncovered cogwheel, or that if the cogwheel had been covered, the injuries received might have been less serious. We think, however, it was a question of fact exclusively for the jury, whether or not the uncovered cogwheel contributed, in any degree, to plaintiff's injury. Such facts also might be pertinent as tending to show defendant's want of ordinary care in providing a reasonably safe place for the plaintiff in which to work.

Defendant places very much reliance upon that part of its defense which relates to the assumption of risk by the plaintiff. In this defense we really believe that defendant must fail. If the injuries which plaintiff received were the result of defendant's negligence, the defense of the assumption of risk by the plaintiff could have but little, if any, force. The jury, by their verdict, must have found that defendant was negligent. It is true the plaintiff had been in the employ of the defendant for several years as section foreman prior to the time he was placed in charge of the coal shed at Fortuna. He had been in charge of the coal shed from four or five months prior to the time he received the injuries. He knew the character of the construction of the coal shed at Crosby and had seen others of like kind, but that is largely immaterial. Plaintiff was, of course, in a general way familiar with the construction of the coal shed at Fortuna. The narrow walk between the openings in the shed at Fortuna was materially different than the one at Crosby, or those which plaintiff had seen, in that it was narrower by 10 inches. The narrowing of this walk between the two openings in the shed at Fortuna might greatly increase the danger of plaintiff's personal safety without him being conscious or aware of the increase of danger, and he might not know and appreciate the increased risk resulting from the material narrowing of the walk between the openings. He had a right to assume that the master would not reduce the width of the walk between the openings to such an extent that, under any condition that might arise, such reduction of the width of the walk would endanger or imperil plaintiff's personal safety. If the danger were greatly increased, it cannot, as a matter of law, be said to have been so obvious that the plaintiff was bound to know and appreciate

it. The plaintiff was not bound to know and appreciate every danger that might exist by reason of the improper construction or remodeling of the coal shed, nor the dangers to which he might be exposed under every condition that might possibly arise. He was not bound to know and appreciate that a condition would arise whereby the shed would be filled with smoke, gas, and steam which would cause the plaintiff to become unconscious and fall as he did, and was thereby injured, as the testimony shows.

If the master fails to use ordinary care and reasonable diligence in providing a safe place for the servant in which to perform his duties, or fails to use due diligence in informing himself whether or not the place where the servant is to perform his duties is safe; or, if the master permits the place in which the servant is performing his duties to become unsafe temporarily or permanently by causes which are under the master's control, such as in this case permitting his engines to emit large quantities of smoke, gas, and steam in close proximity to the place where the servant is performing his duties, in such manner that the shed was filled with smoke and steam thus subjecting the plaintiff to a danger which, by the use of ordinary intelligence, he could not have anticipated, the master, we think as the jury has found, would be negligent. Under such circumstances it could hardly be claimed the plaintiff assumed the risk and increased danger, nor that the danger was so obvious that the plaintiff should have known it, nor that it was an incident of his employment. The jury are the exclusive judges of the question of the assumption of risk. They have found in favor of the plaintiff and we think properly so.

We have examined with care the authorities cited by the defendant in support of the defense of the assumption of risk, including Ragon v. Toledo, A. A. & N. M. R. Co. 97 Mich. 265, 37 Am. St. Rep. 336, 56 N. W. 612. We would like to discuss each of the cases at length. To do so would make this opinion unnecessarily long. We do not think the cases are parallel with the case at bar. They are such cases, however, as tend to support the doctrine of assumption of risk. We feel, however, that the conclusion arrived at in the case at bar is legally sound. In the Ragon Case cited by the appellant, the honorable Court, in the syllabus, said: "Plaintiff, while attending in the daytime to uncoupling a moving freight car from the engine in order that the car

might be left on a sidetrack, was injured by reason of stepping into an unfilled space between the ties near the rail from 2 to 4 inches deep caused by failure to ballast the sidetrack the whole width. The sidetrack had been in that condition during the time of plaintiff's employment, and he had passed the place of injury frequently in the discharge of his duties, but testified that he supposed the track was smooth. And it is held that there was a failure to show negligence on the part of the defendant; that the plaintiff was or ought to have been familiar with the sidetrack, *and if he was not, common prudence dictated that he should not venture between the moving car and engine without first looking under the car to examine the character of the roadbed, all of which defendant had a right to expect of him."*

The following language is also found in the opinion: "Self-preservation should have prompted him to look at this track to see whether it was in such condition as to warrant his going between a moving train and engine, *though he had never seen the road before."*

The court in the case, in effect, said the plaintiff should not recover because he ought to have been familiar with the sidetrack, and that if he were not familiar with the sidetrack he should have looked under the car to examine the character of the roadbed before stepping between the car and the engine,—all of which the defendant had a right to expect of him, and that if he did not do any of these things, he should then have invoked the law of self-preservation, which should have prompted him to look at the track to see if it were in such condition as to warrant his going between the moving train and engine though he had never seen the track before. That is surely the placing of very extensive duties on the brakeman in addition to the great number of duties which he has to perform, to do the actual work for which he is employed, and we cannot agree with the principle as thus so broadly stated. The injury, in the case we are discussing, might have occurred at any other sidetrack of the defendant over which the plaintiff passed in the discharge of his duties on his entire trip. The adoption of that principle, as we view it, would hold the brakeman to be thoroughly familiar with all of the sidetrack as well as of the main roadbed over which his trip or trips extended or his employment called him, no matter what the length might be. He must not only be generally familiar with the condition of the tracks, but he must know, or be held to know,

of every defect in the sidetracks or on the main track, or upon any part of the railway system where his duties might call him; or, in the event of his not being thoroughly familiar with all of the side or main track over which his trips extend, before he couples or uncouples a train from an engine or stepping between two cars to couple them, he must stoop down, make a thorough examination of the ground before stepping in to make the coupling. If he would do all the things, as we view the matter, he would be a man who would have a full realization of the principle of assumption of risk, but we believe he would be a decidedly poor brakeman. We must not forget that we are living in the present, —the age of electricity and of steam; that freight trains to-day are often between half a mile and a mile long; that employees of railways must use practically all of the time while they are on duty to perform the actual work and duties for which they are employed. It would, we believe, be impossible and at least impracticable for them, in the execution of their duties, to first examine each and every appliance or road bed which they use in the performance of their duties to determine if there be any defect in the same before they executed their duty. As we view it, under such rule, a brakeman who, in the execution of his duties, is on the top of a freight car and wishes to descend to perform some other duty, would, before descending, be required to examine the ladder and each rung thereof to determine if the same were in proper condition; for, under such rule, if he did not do so and one of the rungs were deficient and broke under his weight, and he fell to the ground and became injured by a train passing over his foot or some part of his body, he could not recover because he should have examined the ladder before descending. If he were going to set a brake, he should examine the brake and brake wheels, and see that it was not deficient, for if he should take hold of the wheel with which the brake is set and turn it with a view of setting the brake, and the wheel or brake should give away and he fall between the cars and be injured, he could not recover because he had not examined the brake for defects. So it would be, it seems to us, in the performance of every duty, according to such rule. We feel we cannot agree that such is the correct rule. With reference to railways, we believe it to be the correct rule of law that holds it to be the duty of the master to keep his appliances in proper condition for the use for which they are intended. It is, we

believe, his duty to keep his roadbeds, both on the main track and sidetracks, in proper condition. If he does not do so, it is an act of negligence on his part. Why, then, should an employee suffer for the negligence of the master? If the hole had not been in the sidetrack the brakeman would not have been injured. It was no part of the brakeman's duty to see that there were no holes in the sidetrack, nor to keep the appliances of whatever kinds in proper condition for use. This is exclusively a duty of the master. It is the exclusive duty of the master not only to maintain his roadbeds, but all other appliances, in proper condition so that the brakeman or other employee could perform his respective duties with full reliance that all the appliances, including the roadbeds, are in no way defective. The master must use ordinary care to provide a safe place for the employee in which to work. If the master does not do so and the employee is injured, the proximate cause of the injury is the master's negligence, and he cannot, it seems to us, evade his liability by relying on the doctrine of assumption of risk and compel another to bear the burden of the master's own negligence. The rule in the Ragon Case is effective in Michigan, but is stated too broadly to be followed in this state, and it is valuable to us mostly in its educational character. Space forbids a detailed analysis of all the other cases cited by appellant.

We think the more correct rule, stated concisely, and more in harmony with the spirit of our statute, is that where assumption of risk is pleaded as a defense, and if there be merit in such defense, it is in cases where the servant has been shown to have actual knowledge of the defect in the appliances and fully knew and appreciated the danger from the continued use thereof, and continued to use such appliances after having actual knowledge and appreciation of danger. Even in such case, it can be readily understood that it is not the business of the servant to order the master to make the repairs. He has no power to do so. The servant could report to the master the need of repairs. The servant is compelled to earn his living and support himself and family. He must earn his daily bread in the sweat of his brow; he must labor. He has perhaps a wife and children at home whose demands for food and clothing must be met. He must labor even if the appliances are not safe. He is willing to yield his limb, even his life, in performing the duties of his employment, if need be, that those

dependent on him may have the necessaries of life. The master is usually a person of greater intelligence than his servant. He has the power, and it is his duty, to provide safe appliances for the servant in the performance of his duties; and it is his duty to use ordinary care and due diligence to do so, and if he fail and the servant is injured, the master should not be permitted to avoid the burden of his negligence. The question of assumption of risk in this state is exclusively a question of fact for the jury, and in this case the plaintiff received a verdict in his favor thus entirely disposing of that and other questions of fact.

The one remaining point is that of excessive damages. Upon a careful examination of this question, we are convinced the damages are not excessive, nor is there anything in the record to indicate they were founded upon passion or prejudice of the jury. It is true the physicians in giving expert testimony did not state positively what length of time would be required for the plaintiff to have permanent recovery from his injury. This does not necessarily prevent the jury from taking into consideration such question. The injuries which plaintiff received were all described in the testimony. The injuries having been shown by proper testimony and the character of such injuries having been fully shown, the jury, in fixing damages, could determine from such testimony the probability of the permanency of recovery and the time plaintiff would be wholly or partly incapacitated. It is conceded that plaintiff had an earning capacity at the time of the injury of at least $55 or $60 per month. The jury, being the exclusive judges of all the facts, fixed the plaintiff's damages, including costs, at $3,668.60. As a matter of law, we cannot say the same is excessive, and believe the verdict of the jury should stand.

The order appealed from overruling the motion of defendant for a judgment in said action notwithstanding the verdict or for a new trial, and the judgment appealed from, are affirmed, with costs.

BIRDZELL and ROBINSON, JJ., concur in the result.

CHRISTIANSON, J. (concurring specially). The principal points relied upon by the defendant in this case are: (1) That there is no evidence of negligence; (2) that in any event the plaintiff voluntarily

assumed the risk of the injuries; and (3) that the damages awarded, if any were assessable at all, are clearly excessive.

It is of course conceded by the defendant that the questions of negligence and assumption of risk are for the jury in all cases where the facts are controverted, or, if uncontroverted, are such that different minds might reasonably come to different conclusions as to whether the defendant was in fact negligent, or the plaintiff did assume the risk of the injury involved in the suit. But defendant contends that in this case only one inference can be reasonably drawn both as to negligence and assumption of risk; that these inferences are both in favor of the defendant, and that hence the court should have directed a verdict in its favor. The evidence in this case is very close upon both propositions, but I am not prepared to say that reasonable men might not reasonably draw the inference from the evidence that the defendant was negligent, and that the plaintiff did not assume the risk of the injuries for which he seeks to recover in this action. Hence, I cannot say as a matter of law either that the defendant was not negligent, or that the plaintiff assumed the risk of the injury. Neither can I say that the verdict is so excessive as to justify this court in interfering with the trial court's order denying a new trial. For these reasons I concur in an affirmance of the judgment and the order appealed from. I do not, however, concur in the discussion relative to the doctrine of assumption of risk, and the criticism of the decision of the supreme court of Michigan in Ragon v. Toledo, A. A. & N. M. R. Co. 97 Mich. 265, 37 Am. St. Rep. 336, 56 N. W. 612, contained in the opinion prepared by Mr. Justice Grace. The doctrine of assumption of risk has become firmly established as a part of the law of master and servant. It has been embodied in the statutory law of this state. See § 6107, Compiled Laws 1913. It is available as a defense under the Federal Employer's Liability Act, except in cases where the carrier has violated a statute enacted for the safety of the employees. See Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 58 L. ed. 1062, L.R.A.1915C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834; Jacobs v. Southern R. Co. 241 U. S. 229, 60 L. ed. 970, 36 Sup. Ct. Rep. 588; Baugham v. New York, P. & N. R. Co. 241 U. S. 237, 60 L. ed. 977, 36 Sup. Ct. Rep. 592, 13 N. C. C. A.

138. If the doctrine of assumption of risk is wrong or undesirable, let it be modified or abrogated by legislative enactment, and not by judicial fiat.

BRUCE, J. I dissent.